(610 P.2d 1140)
No. 50,510

GEORGE DAVIS, JAMES HABIGER, and STEVEN RUPERT, *Appellants,* v. C. C. GRACE, *Appellee.*

Opinion filed May 9, 1980.

*Robert S. Jones,* of Norton, Wasserman & Jones, of Salina, for the appellants.
*James P. Mize,* of Clark, Mize & Linville, Chartered, of Salina, for the appellee.

Before ABBOTT, P.J., SWINEHART and MEYER, JJ.

SWINEHART, J.: This appeal arose out of a transaction for the purchase of cattle. The Kansas plaintiffs, George Davis, James Habiger and Steven Rupert, appeal from a judgment of the district court of Ottawa County dismissing their petition for lack of jurisdiction over the person of the defendant C. C. Grace, a Missouri resident.

The plaintiffs contend that the trial court erred by holding that the defendant lacked sufficient minimum contacts with Kansas to vest the Kansas courts with personal jurisdiction over him.

Before stating the facts, we note that the issue on appeal is very narrow. However, some of the facts contained in the briefs of both parties go far beyond those necessary to resolve that issue. For example, the defendant states that he made no contract with

.

Davis and Habiger because he was unaware of any partnership agreement that may have existed among the three plaintiffs. The district court set aside its finding on this point and we need not decide that question. As the merits cannot be reached on this appeal, the facts set forth herein address only the in personam jurisdiction question.

In August, 1973, plaintiffs George Davis, James Habiger and Steven Rupert were residents of Ottawa County, Kansas. The defendant C. C. Grace lived on a farm two miles north of Koshkonong, Missouri, near the Arkansas-Missouri border. For over twenty-five years, the defendant had operated a business as an order buyer for cattle which he purchased at Missouri and Arkansas sale barns for buyers in several states, including Kansas, Oklahoma, Minnesota and California. During August plaintiffs had discussed among themselves the possibility of purchasing some cows together, with each man receiving a one-third interest.

Plaintiff Rupert, a farmer in Ottawa County, had purchased approximately 2,000 head of cattle through the defendant over a period of several years prior to the transaction involved in this lawsuit. The record does not reveal how the two men met. In his deposition defendant stated Rupert came to his home in Missouri after learning about the defendant's work through someone else. In August, 1973, Rupert called the defendant at his home in Missouri about several cattle purchases. During one of these conversations, Rupert told the defendant that he wished to purchase a truckload of cattle and told him the type of cattle he wanted. Rupert telephoned Habiger who was vacationing in Missouri to discuss the matter with him. Habiger then called the defendant in Missouri and spoke with him about the cattle, telling him that they were interested in pregnant cows. The defendant, however, stated he could not recall whether such a conversation ever took place. Plaintiff Davis never spoke with the defendant about the transaction.

The defendant purchased cows for Rupert's account with invoice and shipment dates of August 19, August 20, and August 23, 1973. There is some discrepancy in the numerous documents in this record as to exactly which one of these purchases constituted the transaction that gave rise to this suit. However, it would appear from the briefs that the fifty-two cattle which Rupert purchased and later sold a one-third interest in to the other two

plaintiffs were received by him on August 20, 1973. Rupert arranged for this transaction by a telephone call made from his home in Kansas to the defendant's home in Missouri. In his deposition the defendant stated the transaction in question was completed on the basis of a telephone call he received on August 22, 1973, in Batesville, Arkansas, the location of the sale barn where he purchased the cattle for Rupert, but the briefs indicate the call was received in Missouri. Regardless of which dates or which location the defendant received the order, it is clear that the defendant received the calls outside the State of Kansas, and never personally entered the state after purchasing the cattle and arranging for their shipment to Minneapolis, Kansas. After purchasing the cattle in Arkansas the defendant sent the cattle directly to Minneapolis by an independent trucker whom he had hired f.o.b. freight collect. Rupert had the right to inspect the cows and if he decided to reject them, they were to be returned to the defendant within a reasonable time. Rupert paid the trucker for delivery of the cows and also gave him a check to return to the defendant to cover the purchase price and the defendant's commission.

The defendant also sent negative brucellosis test reports along with the cows when shipped. Apparently some discrepancies between the numbers on the cows tested and the numbers on the test reports existed. In any event, certain cows in the herd were later found to have brucellosis and, as a result, were sold. Eventually, the plaintiffs sold the entire herd when they were unable to alleviate the infection.

Plaintiffs' first attempt to file suit in the district court of Ottawa County failed when the court found in July of 1975 that service of process on the defendant did not comply with law. New summons was later duly served on the defendant. The defendant answered, specifically contending that the district court of Ottawa County had no subject matter or personal jurisdiction. Before the court reached any determination on those questions, the plaintiffs were allowed to amend their petition to allege additional causes of action. In essence, they pleaded that the defendant breached a contract he entered into with the plaintiffs for the purchase of cattle, and that he further breached his implied warranty of merchantability because the cows were infected with brucellosis. Therefore, the plaintiffs sought inciden-

tal and consequential damages of $14,257.64. Count II was based on alleged fraudulent conduct on the part of the defendant in that he knowingly sent false and fraudulent brucellosis test reports with the fifty-two cattle and therefore the plaintiffs sought punitive damages of in excess of $10,000. Alternatively in Count III the plaintiffs sought $14,257.64 if it were determined that the defendant was an agent for the plaintiffs and that he negligently performed that agency. In answer to the amended petition, the defendant again, among other things, denied that the court had jurisdiction of the subject matter or over him.

After conducting much discovery, the defendant filed a motion to dismiss against each of the plaintiffs on the grounds that the court had no personal jurisdiction over him and that the amended petition was barred by the appropriate statute of limitations. In a journal entry filed on September 25, 1978, which incorporated a letter opinion dated September 6, 1978, the trial court dismissed the plaintiffs' action for lack of personal jurisdiction over the defendant. In the incorporated opinion letter the trial court had found that the alleged contract between the parties was made in Missouri. The court also found that the defendant did not have the necessary contacts in Kansas to satisfy due process requirements under the Fourteenth Amendment, and therefore, long-arm jurisdiction could not be established over him under K.S.A. 60-308(b)(1) or (5). In addition, the court found that there was no partnership among the plaintiffs or joint venture regarding the transaction alleged in the amended petition. Later in a journal entry filed on December 14, 1978, the court altered and amended the September 25 journal entry on the motion of plaintiffs and struck that portion of the memorandum decision finding that no partnership existed among the parties. Plaintiffs appealed on October 13, 1978.

Two questions must be addressed to determine whether the trial court properly concluded that it lacked personal jurisdiction over the defendant. First, did the transaction giving rise to the plaintiffs' suit fall within any of the provisions of K.S.A. 60-308(b), the Kansas long-arm jurisdiction statute? On appeal the plaintiffs submit that the transaction is encompassed within section (b)(5) (the contract provision). Second, if any of the provisions of K.S.A. 60-308 are met, would the exercise of in personam jurisdiction by the Kansas district court over the defendant afford

him due process of the law under the Fourteenth Amendment? The trial court concluded that the transaction could not be constitutionally encompassed within 60-308(*b*)(5) or (*b*)(1) (doing business provision), because the defendant lacked the requisite minimum contacts with Kansas to satisfy the due process requirements and the unilateral activities of the plaintiffs in Kansas were not sufficient to confer jurisdiction upon the Kansas courts.

K.S.A. 60-308(*b*)(1) and (5) read as follows:

"(*b*) *Submitting to jurisdiction — process.* Any person, whether or not a citizen or resident of this state, who in person or through an agent or instrumentality does any of the acts hereinafter enumerated, thereby submits said person, and, if an individual, his or her personal representative, to the jurisdiction of the courts of this state as to any cause of action arising from the doing of any of said acts:

"(1) The transaction of any business within this state;

. . . .

"(5) Entering into an express or implied contract, by mail or otherwise, with a resident of this state to be performed in whole or in part by either party in this state;"

Plaintiffs urge that the defendant has submitted himself to the jurisdiction of the Kansas courts because he entered into a contract with the plaintiffs, Kansas residents, to purchase cows in their behalf. The offer was made over the telephone by Rupert in Kansas and accepted by telephone by the defendant in Missouri. Defendant agreed to buy the cows and have them and their brucellosis test reports transported to Kansas f.o.b. freight collect by an independent trucker he was to hire. Further, the plaintiff Rupert was to inspect and then to accept or to reject the cows in Kansas and pay the trucker for his services. Rupert was also to deliver to the trucker the defendant's fee, a check drawn on a Kansas bank account, which included payment for defendant's services, as well as the sums he advanced for the cows. Undoubtedly, this transaction falls within the literal language of K.S.A. 60-308(*b*)(5). The place where the contract was actually made, which is discussed at great length in the plaintiff's brief, is really irrelevant to this initial inquiry.

*Misco-United Supply, Inc. v. Richards of Rockford, Inc.,* 215 Kan. 849, 528 P.2d 1248 (1974), was the first case to construe 60-308(*b*)(5). The court found that subsection, a 1971 amendment, was intended to broaden the effect of the statute. That is, 60-308(*b*)(5) was designed to escape the rather narrow definition that had been placed upon subsection (*b*)(1). *Misco-United Sup-*

*ply* and the other Kansas cases which have applied 60-308(*b*)(5) do not always clearly differentiate between the two issues as considered on this appeal, *i.e.,* whether both the statutory and constitutional requirements were met. In fact, *Misco* is decided upon the due process requirements. Those arguments in *Misco* and its progeny will be discussed later. Undoubtedly the transaction between the parties herein falls within the scope of K.S.A. 60-308(*b*)(5) on its face.

In enacting K.S.A. 60-308, the legislature intended to extend the jurisdiction of Kansas courts to the full extent authorized by the due process clause of the Fourteenth Amendment to the United States Constitution. *Misco-United Supply, Inc. v. Richards of Rockford, Inc.,* 215 Kan. 849; *White v. Goldthwaite,* 204 Kan. 83, 460 P.2d 578 (1969); *Woodring v. Hall,* 200 Kan. 597, 438 P.2d 135 (1968); *Rosedale State Bank & Trust Co. v. Stringer,* 2 Kan. App. 2d 331, 579 P.2d 158 (1978). Therefore, this court must also be satisfied that the district court's exercise of jurisdiction over the defendant does not violate his constitutionally protected right of due process.

The power of a state court to render a valid personal judgment against a nonresident defendant is limited by the due process clause of the Fourteenth Amendment. *Kulko v. California Superior Court,* 436 U.S. 84, 91, 56 L.Ed.2d 132, 98 S.Ct. 1690 (1978). In a recent opinion, *World-Wide Volkswagen Corp. v. Woodson,* ___ U.S. ___, 62 L.Ed.2d 490, 100 S.Ct. 559 (1980), the United States Supreme Court reaffirmed the ability of a state court to exercise personal jurisdiction over a nonresident defendant only so long as there exist "minimum contacts" between the defendant and the forum state. *World-Wide Volkswagen Corp. v. Woodson,* 62 L.Ed.2d at 498, relying upon *Internat. Shoe Co. v. Washington,* 326 U.S. 310, 316, 90 L.Ed. 95, 66 S.Ct. 154 (1945). The minimum contacts requirement protects a nonresident defendant from the burden of litigation in an inconvenient or distant forum and also ensures that the individual states do not exceed the limits imposed due to their status as coequal sovereigns under our federal system. *World-Wide Volkswagen Corp. v. Woodson,* 62 L.Ed.2d at 498.

The minimum contacts requirement applied to foreign corporations in *Internat. Shoe Co. v. Washington* has also been applied to natural persons. See Annot., 20 A.L.R.3d 1201. "The

differences between individuals and corporations may, of course, lead to the conclusion that a given set of circumstances establishes state jurisdiction over one type of defendant but not over the other." *Shaffer v. Heitner,* 433 U.S. 186, 204, n. 19, 53 L.Ed.2d 683, 97 S.Ct. 2569 (1977).

Mechanical or quantitative criteria are insufficient to determine whether the contacts justify subjecting a nonresident defendant to the jurisdiction of a state court. Rather, the nature and quality of the activity must be examined to determine whether due process has been afforded. *Internat. Shoe Co. v. Washington,* 326 U.S. at 318, 319. In every case there must be "some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." Further, unilateral activities of those claiming some relationship with the nonresident defendant are insufficient to satisfy the requirement of contact with the forum. *Hanson v. Denckla,* 357 U.S. 235, 253, 2 L.Ed.2d 1283, 78 S.Ct. 1228 (1958).

*World-Wide Volkswagen Corp. v. Woodson* expounded upon some of these accepted principles by discussing the role of "foreseeability" as a criterion for establishing in personam jurisdiction. Apparently "foreseeability" is a factor to be considered in determining whether a nonresident defendant has purposefully availed itself of the privilege of conducting its business within the forum. Although finding foreseeability of injury in the forum was not sufficient for personal jurisdiction under the due process clause, the court acknowledged that it was not wholly irrelevant. "[T]he foreseeability that is critical to due process analysis is not the mere likelihood that a product will find its way into the forum State. Rather, it is that the defendant's conduct and connection with the forum State are such that he should reasonably anticipate being haled into court there." *World-Wide Volkswagen Corp. v. Woodson,* 62 L.Ed.2d at 501. Given the pattern of defendant's cattle transactions with plaintiff Rupert and additional residents of Kansas and other states, defendant seemingly meets this standard.

Furthermore, *World-Wide Volkswagen Corp. v. Woodson* provided that if the sale of the product is not an isolated one, "but arises from the efforts of the manufacturer or distributor to serve, directly or indirectly, the market for its product in other States, it

is not unreasonable to subject it to suit in one of those States" if the product has caused injury there. *World-Wide Volkswagen Corp. v. Woodson,* 62 L.Ed.2d at 501-502. Even though defendant here did not own the cattle in question, certainly his "services" are sufficiently analogous to the sale of products to adopt the rationale of *World-Wide Volkswagen* to this lawsuit.

Three cases decided by the Kansas courts which address the due process problems relating to in personam jurisdiction are instructive. In *Misco-United Supply, Inc. v. Richards of Rockford, Inc.,* 215 Kan. 849, the plaintiff, a Kansas corporation with its principal place of business in Wichita, sold the defendant, an Illinois corporation, five tank liners. The court declined to find that Kansas had personal jurisdiction over the defendant corporation consistent with the due process provisions of the Fourteenth Amendment, because the defendant lacked sufficient contacts with the state. The court emphasized that the entire performance of the contract occurred outside of Kansas. No manufacturing was performed here and none of the goods in question were ever brought into the state. Furthermore, none of the defendant's personnel had ever been here. The only actual contact of the defendant with Kansas was a phone call to plaintiff in Wichita to place its order. "In effect, plaintiff corporation merely acted as a clearing-house for what was essentially an out-of-state transaction." 215 Kan. at 854. Additionally, the court could not find that the defendant purposefully availed itself of the privilege of conducting any activity here. The mere placing of an order for goods by phone with a Kansas resident was insufficient to invoke the benefits and protections of Kansas law. Finally, the court observed that no substantial hardship would result from denying jurisdiction.

In *Prather v. Olson,* 1 Kan. App. 2d 142, 562 P.2d 142 (1977), and *Rosedale State Bank & Trust Co. v. Stringer,* 2 Kan. App. 2d 331, this court relied upon the factors set forth in *White v. Goldthwaite,* 204 Kan. 83 (a K.S.A. 60-308[*b*][1] case), which must coincide to determine whether in personam jurisdiction may constitutionally be exercised over a nonresident defendant. In both *Prather v. Olson* and *Rosedale State Bank & Trust Co. v. Stringer,* jurisdiction had been invoked under both 60-308(*b*)(1) and (*b*)(5). The test set out in *White v. Goldthwaite,* 204 Kan. at 88, is as follows:

"From the foregoing cases it appears there are three basic factors which must coincide if jurisdiction is to be entertained over a nonresident on the basis of transaction of business within the state. These are (1) the nonresident must purposefully do some act or consummate some transaction in the forum state; (2) the claim for relief must arise from, or be connected with, such act or transaction; and (3) the assumption of jurisdiction by the forum state must not offend traditional notions of fair play and substantial justice, consideration being given to the quality, nature and extent of the activity in the forum state, the relative convenience of the parties, the benefits and protection of the laws of the forum state afforded the respective parties, and the basic equities of the situation."

*Prather v. Olson* involved a Kansas plaintiff who had entered into a tax shelter cattle leasing program with a nonresident defendant. The court concluded that the contacts which occurred in Kansas were both more numerous and significant than those described in *Misco-United Supply, Inc. v. Richards of Rockford, Inc.,* 215 Kan. 849. The plaintiff in *Prather v. Olson* had learned of the defendant's program through friends in Kansas and the defendant's accountant, plaintiff's neighbor, had discussed the program with plaintiff in Kansas. The plaintiff also paid for the cattle and received his bill of sale for them here. Lease payments were made to the plaintiff and he had assented to two extensions of the lease in Kansas. The court found that the defendant initiated the transaction by mail and through his accountant, but initial contact alone did not appear to be an indispensable element when the other contacts were sufficient. Indeed, elsewhere it has been held that initial contact is not decisive. *Pedi Bares, Inc. v. P & C Food Markets, Inc.,* 567 F.2d 933, 937 (10th Cir. 1977). Note also that in *Prather* as in this case the nonresident individual defendant was a seller who stood to gain economic advantage from this state through his business transactions.

In *Rosedale State Bank & Trust Co. v. Stringer,* 2 Kan. App. 2d 331, a loan was made in Kansas from a Kansas bank. The loan sum was deposited in and subsequently withdrawn from the plaintiff Kansas bank. When the loan was due, a renewal note was executed by the nonresident defendant in Missouri. The court found that the location of the execution of the renewal was immaterial as the parties intended that the note was to be delivered and accepted by the Kansas bank and that all payments were to be made there. The agreement would also have substantial effect in Kansas. The court distinguished *Misco-United Supply, Inc. v. Richards of Rockford, Inc.,* 215 Kan. 849, stating that the transaction before it was not a unilateral agreement for payment

as was the *Misco-United* transaction. Therefore, the court found sufficient contacts to support in personam jurisdiction over the nonresident defendant in Kansas.

The *Goldthwaite* test appears entrenched in Kansas case law as the standard for determining whether the exercise of in personam jurisdiction over nonresident defendants would offend their constitutional right to due process. Although this test had been stated differently in other jurisdictions, it nonetheless appears to accord with the most recent pronouncements by the United States Supreme Court on the subject.

Therefore, this test should be applied to the case at bar as follows:

(1) Although it is not clear from the record who initiated the continuing buyer/seller relationship between Rupert and the defendant several years prior to the transaction in question, and despite the fact that the plaintiff Rupert initiated the contact with the defendant in this particular case, the defendant was required to perform a substantial part of the contract in Kansas. Defendant was responsible for delivery into the State of Kansas the cattle and the brucellosis test reports through an independent trucker whom he hired for that purpose. In addition, the defendant was required to return the cattle to himself if the cattle were rejected by the plaintiffs. Under the facts of this case, upon the acceptance of the cattle by plaintiffs in Kansas, the defendant had completed the performance of his part of the contract. And the trucker might be appropriately viewed as defendant's agent. Further, any failure to so deliver the cows or accept their return would undoubtedly have constituted a breach of defendant's contract with plaintiff Rupert, even though defendant was not to personally deliver them. Therefore, the first factor in *Goldthwaite* is met.

(2) The second factor is easily satisfied. Clearly, the plaintiffs' claim that the cows were not free from brucellosis as reported in the test reports arose from the agreement between the parties.

(3) The nonresident defendant was an individual who regularly carried on similar business transactions not only with plaintiff Rupert, but also with other Kansas residents. Although defendant obtained the cattle for his buyers from states other than Kansas, unlike *World-Wide Volkswagen,* it was completely foreseeable that their ultimate destination was within this state and he could anticipate that any complaints regarding them would originate

here. Furthermore, defendant could be deemed to be invoking the benefits and protections of the laws of this state because he was substantially performing part of his contract here (delivering the cows). He also was deriving substantial economic gain from his Kansas transactions. His payments were to be received through a Kansas bank by his agent in Kansas. Defendant should not be allowed to insulate himself from suit in Kansas simply because he never personally entered the state.

Additionally, defendant is a nonresident individual, not a corporation, who regularly engaged in commerce with Kansas residents, and it would not appear to cause substantial hardship to force him to defend in this state. Regardless of where the trial is held, witnesses for the parties will likely be compelled to come from Kansas, Missouri and Arkansas. Therefore, Kansas appears to be as convenient a forum as any of the possibilities. (For an extensive discussion of cases on the subject from foreign jurisdictions, see Annot., 23 A.L.R.3d 551.)

Therefore, these considerations satisfy the third factor in *Goldthwaite,* and on this basis the judgment of dismissal is reversed and the case is reinstated for further proceedings.