**Karl L. SINGER, Appellant,**

v.

**CLAYTON BROKERAGE CO. OF ST. LOUIS, INC., and Scott D. Dial, Appellees.**

**No. 20710.**

Court of Civil Appeals of Texas, Dallas.

June 23, 1981.

Rehearing Denied July 23, 1981.

W. S. Barron, Jr., Brice & Barron, Dallas, for appellant.

T. Richard Handler, Jenkens & Gilchrist, Jerry Clements, Allen & Clements, Dallas, for appellees.

Before AKIN, ROBERTSON and CARVER, JJ.

ROBERTSON, Justice.

This is an appeal from the trial court's order dismissing plaintiff Singer's action pursuant to defendants Clayton Brokerage and Dial's plea in abatement. In their plea, defendants contended plaintiff's action for misrepresentation and deceptive trade practices in connection with futures contracts should be abated because the Commodity Futures Trading Commission, the CFTC, has either exclusive jurisdiction or primary jurisdiction with respect to transactions involving commodity futures contracts such as those pleaded in plaintiff's petition. Defendants further contended plaintiff failed to exhaust his administrative remedies prior to commencing suit. The trial court sustained defendants' plea, plaintiff declined to commence reparation proceedings before the CFTC, and thereafter, the trial court dismissed plaintiff's action. We hold the CFTC has neither exclusive nor primary jurisdiction of plaintiff's claims and plaintiff is not required to exhaust his administrative remedies prior to commencing this suit. Accordingly, we reverse and remand for trial on the merits.

Plaintiff's petition alleges that he maintained a margin account with defendant Clayton Brokerage, a member of the Chicago Board of Trade. Defendant Dial was the employee of Clayton Brokerage through which plaintiff conducted his trading in commodities futures. On September 18,

1979, defendant Dial represented to plaintiff that he should buy some "bull spreads" in silver since the silver market would soon "invert" and that, while the risk was almost nil, the potential profits ranged from $2,000 to 15,000 per contract. The trading policy contractually established between defendants and plaintiff regarding plaintiff's margin account was that, unless plaintiff instructed defendant Dial to the contrary, defendant Dial would buy at close of trading of the day the order was placed. Plaintiff placed the order on September 18, 1979, and gave no instructions contrary to the policy of buying at close of trading.

On September 21, 1979, defendant Dial told plaintiff that the Chicago Board of Trade had changed the margin requirements from $500 to $5,000 per spread, that plaintiff's equity account at defendant Clayton Brokerage in the amount of $110,-000 had been used, and that plaintiff needed to deposit with defendant Clayton Brokerage immediately an additional $32,129. Plaintiff asked defendant Dial if the total margin requirement regarding the 100 spreads he ordered September 18, 1979, plus another 100 spreads he had previously purchased, would be one million dollars, and defendant Dial responded that it would but that plaintiff could wait a few days to make the deposit since the Chicago Board of Trade might lower the margin requirement right away.

On September 22, 1979, plaintiff received from defendant Clayton Brokerage a written confirmation showing a purchase of 100 Chicago silver spreads, February 80 and February 81, made September 19, 1979, rather than September 18, 1979, at a price differential of $0.315 rather than $0.57 which was the price differential at close of trading on September 18, 1979. Plaintiff questioned defendant Dial regarding whether there was a mistake in the written confirmation. Defendant Dial replied that no mistake had been made. Defendant Dial again stated that the margin requirements imposed by the Chicago Board of Trade regarding spreads had been increased to $5,000 per contract and also stated that such increase applied to all member firms.

On September 27, 1979, defendant Dial admitted to plaintiff that the Chicago Board of Trade had not raised the margin requirements of spreads and that the statements he had made to plaintiff with respect thereto were false. Plaintiff alleged that defendant Dial's statements regarding margin requirements were material to his trading decisions and were relied upon by him to his detriment. Plaintiff further alleged that as a result of defendant Dial's conduct, including placing his order on the wrong day and misrepresenting the margin requirements, he suffered actual damages in excess of $500,000 in connection with his order of September 18, 1979. Additionally, plaintiff alleged defendants are liable to him for exemplary damages under the Deceptive Trade Practices Act.

In response to the above allegations, defendants contend that abatement is proper because the CFTC has exclusive jurisdiction with respect to transactions involving commodity futures contracts as pleaded in plaintiff's petition. In support of their contention, defendants rely upon the following language of the Commodity Exchange Act (the Act), 7 U.S.C.A. § 1 *et seq.* (1980): "the Commission [the CFTC] shall have exclusive jurisdiction with respect to accounts, agreements . . . and transactions involving contracts of sale of a commodity for future delivery . . . ." 7 U.S.C.A. § 2 (1980).

In their briefs, defendants attempt to dismiss additional language, in the same section of the Act as the language quoted above, which states that "nothing in this section shall supersede or limit the jurisdiction conferred on courts of the United States or any State." Defendants contend this language was added solely to preserve contract and antitrust claims. We cannot agree. While the language apparently does preserve such claims, it clearly is not limited to those claims. The conference report concerning the Act states:

(4) *Jurisdiction of the Commission*

The *House* bill provides for exclusive jurisdiction of the Commission over all futures transactions. However, it is pro-

vided that such exclusive jurisdiction would not supersede or limit the jurisdiction of the Securities and Exchange Commission or other regulatory authorities.

The *Senate* amendment retains the provision of the *House* bill but adds three clarifying amendments. The clarifying amendments make clear that (a) the Commission's jurisdiction over futures contract markets or other exchanges is exclusive and includes the regulation of commodity accounts, commodity trading agreements, and commodity options; (b) the Commission's jurisdiction, where applicable, supersedes State as well as Federal agencies; and (c) Federal and State courts retain their respective jurisdictions.

. . . .

The *Conference* substitute adopts the *Senate* amendment, including the provision in section 402(d) of the bill which strikes the last sentence of section 4c of the Commodity Exchange Act. The language being struck provides that "Nothing in this section [section 4c] or section 4b shall be construed to impair any State law applicable to any transaction enumerated or described in such sections."

Under the exclusive grant of jurisdiction to the Commission, the authority in the Commodity Exchange Act (and the regulations issued by the Commission) would preempt the field insofar as futures regulation is concerned. Therefore, if any substantive State law regulating futures trading was contrary to or inconsistent with Federal law, the Federal law would govern. In view of the broad grant of authority to the Commission to regulate the futures trading industry, the Conferees do not contemplate that there will be a need for any supplementary regulation by the States.

We construe the language of the statute, viewed in the light of the conference report, as providing for exclusive federal *regulation* of the field of futures trading, but not as preempting the jurisdiction of the state courts to *adjudicate* claims. We note that although the CFTC's jurisdiction, where applicable, supersedes state and federal *agency* jurisdiction, federal and state *courts* retain their respective jurisdictions. We hold that the jurisdiction of the CFTC is not exclusive of the jurisdiction of the state courts. In this connection, we note that both plaintiff and defendants refer us to *Brown v. American Transfer and Storage Co.*, 601 S.W.2d 931 (Tex.1980) for its holding regarding federal preemption and the Deceptive Trade Practices Act. We conclude, however, that *American Transfer* is not in point. There the court was concerned with whether substantive federal law preempted substantive state law. Our concern in this case is whether the federal statute, by its terms, deprives the state courts of jurisdiction, not whether federal law preempts state law.

Defendants further rely upon *Clayton Brokerage Co. v. Mouer*, 531 S.W.2d 805 (Tex.1975) and *State v. Monex International, Ltd.*, 527 S.W.2d 804 (Tex.Civ.App.— Eastland 1975, writ ref'd), for support of their position. Neither case controls the disposition of this case. In both *Mouer* and *Monex* the State of Texas sought to regulate conduct by enjoining the defendant from engaging in certain acts within the state. In both cases the holding was that the CFTC has exclusive jurisdiction *to regulate* the transactions in question. Neither case concerns state court jurisdiction to adjudicate private damage claims. We recognize that to a certain extent the power to adjudicate is the power to regulate. In the light of the express language of the Act providing for state court retention of jurisdiction, however, we believe adjudication of private damage claims in state court is not such regulation as to come within the CFTC's exclusive jurisdiction to regulate.

Defendants next argue that if the CFTC does not have exclusive jurisdiction of plaintiff's claim, it has primary jurisdiction. Our supreme court has held, on the issue of primary jurisdiction, that "where the issue is one inherently judicial in nature . . ., the courts are not ousted from jurisdiction unless the Legislature, by a valid statute, has explicitly granted exclusive jurisdiction to the administrative body." *Gregg v. Delhi-Taylor Oil Corp.*, 162 Tex. 26, 344 S.W.2d

411 (1961). Since defendants' contention regarding exclusive jurisdiction of the CFTC is without merit, the question of whether the CFTC has primary jurisdiction of plaintiff's claim is controlled by the nature of plaintiff's suit. If plaintiff's suit raises issues that are inherently judicial in nature, this court is not ousted from jurisdiction by the doctrine of primary jurisdiction.

The CFTC has consistently taken the position that it does not have primary jurisdiction over claims such as that made by plaintiff. It has stated:

Private litigation seeking damages for alleged violations of provisions of the Act will rarely, if ever, involve issues appropriate for review by the Commission under the doctrine of primary jurisdiction. The judicial resolution of a private fraud action, for example, required only the application of specific statutory standards to the particular conduct alleged. The issues raised by a particular fraudulent scheme, however complicated, are entirely within the conventional utility of the courts to resolve and should therefore not occasion referral to the Commission. "Statement of the Commodity Futures Trading Commission Concerning Referrals of Private Litigation Under the Doctrine of Primary Jurisdiction," 41 Fed. Reg. 18472 (May 4, 1976).

Additionally, the CFTC requires that in the complaint instituting reparation proceedings, the complaining party state that no civil court litigation based upon the facts in the complaint has been instituted or is pending. 17 C.F.R. § 12.21(a)(7) (1978). This requirement would be unnecessary if the CFTC's position were that it has primary jurisdiction because, if that were the case, no civil court litigation could be filed before institution of reparation proceedings with the CFTC.

In this connection, the United States Supreme Court stated in *United States v. Consumer Life Ins. Co.*, 430 U.S. 725, 97 S.Ct. 1440, 52 L.Ed.2d (1977), that "it is well established that the consistent construction of a statute 'by the agency charged with its enforcement is entitled to great deference

by the courts.'" *Id.* at 751–52, 97 S.Ct. at 1454 [citations omitted.] Likewise, the supreme court of Texas has stated:

It is an elementary rule that the contemporaneous and practical construction of a statute by those whose duty it is to carry it into effect is entitled to great respect in the courts. Though not absolutely controlling, it is not to be disregarded without the most cogent and persuasive reasons.

*Neubert v. Chicago, R. I. & G. Ry. Co.*, 116 Tex. 644, 651, 296 S.W. 1090, 1094 (1927). *Accord, Ex parte Roloff*, 510 S.W.2d 913 (Tex.1974); *Calvert v. Kadane*, 427 S.W.2d 605 (Tex.1968); *Moorman v. Terrell*, 109 Tex. 173, 202 S.W. 727 (1918); *Texas Health Facilities Commission v. El Paso Medical Surgical Associates*, 573 S.W.2d 291 (Tex. Civ.App.—Tyler 1978, writ ref'd n.r.e.); *Beckendorff v. Harris-Galveston Coastal Subsidence District*, 558 S.W.2d 75 (Tex.Civ. App.—Houston [14th Dist.] 1977, writ ref'd n.r.e.); *Beckendorff v. Harris-Galveston Coastal Subsidence District*, 563 S.W.2d 239 (Tex.1978); *Lumbermen's Underwriters v. State Board of Insurance*, 502 S.W.2d 217 (Tex.Civ.App.—Austin 1973, writ ref'd n.r. e.). Defendants, however, relying on *Pipe v. Chris-Craft Industries Inc.*, 430 U.S. 1, 97 S.Ct. 926, n. 27, 51 L.Ed.2d 124 (1977) contend that the construction given the Act by the CFTC is of little value because the question of whether plaintiff's claim is one inherently judicial in nature is one peculiarly reserved for judicial resolution. We do not agree with defendants. The CFTC, because of its presumed expertise in the field of commodities regulation, is in a better position than are the civil courts to determine whether a particular type of claim requires its expertise for resolution. Accordingly, we defer to the expertise of the CFTC and therefore, we hold that the CFTC does not have primary jurisdiction of plaintiff's claim.

Defendant's final contention is that the trial court properly dismissed plaintiff's action upon his refusal to exhaust his administrative remedy because he is not entitled to judicial relief until the prescribed administrative remedy has been exhausted. We do not agree. Neither the

Act, nor the agency created to administer the Act, the CFTC, requires that the administrative remedy allowed by the Act, reparation proceedings, be exhausted prior to institution of a suit in state court for damages. A reparation proceeding before the CFTC is an additional remedy available to an aggrieved party and is not exclusive of a damage suit in state court. Exhaustion of administrative remedies is required only where there are statutory requirements therefor. Where the legislative body has elected not to require resort to the administrative agency, the doctrine of exhaustion of remedies does not preclude initiating proceedings in the state courts of Texas. *Texas State Board of Pharmacy v. Kittman*, 550 S.W.2d 104 (Tex.Civ.App.—Tyler 1977, no writ); *Hatter v. Worst*, 390 S.W.2d 293 (Tex.Civ.App.—Amarillo 1965, writ ref'd n.r.e.); *James v. Consolidated Steel Corp., Ltd.*, 195 S.W.2d 955 (Tex.Civ.App.—Austin 1946, writ ref'd n.r.e.).

Because plaintiff's suit is maintainable in the state courts of Texas, the trial court erred in dismissing it pursuant to defendants' plea in abatement. Accordingly, the judgment of the trial court is reversed and the cause is remanded for trial on the merits.

Reversed and remanded.