No. 54,585

RUSSELL W. SCHLATTER and NATHALIE J. SCHLATTER, *Appellees,* v. MO-COMM FUTURES, LTD., a Missouri Limited Partnership; MO-COMM FUTURES, INC., a Missouri Corporation; GORDON D. MacDONALD; GLEN KIRCHER; JULIUS JOHNMEYER; and MICHAEL S. HARE, *Appellants.*

(662 P.2d 553)

Opinion filed April 29, 1983.

*J. Thomas Marten,* of Bremyer & Wise, P.A., of McPherson, argued the cause and was on the brief for appellants Glen Kircher and Julius Johnmeyer.

*James A. Walker,* of Martin, Pringle, Oliver, Triplett & Wallace, of Wichita, argued the cause, and *Terry L. Malone,* of the same firm, was with him on the brief for appellees.

*William M. Schutte,* general counsel for the Commissioner of Securities of Kansas, filed a brief *amicus curiae.*

The opinion of the court was delivered by

HOLMES, J.: This is an appeal by defendants Glen Kircher and Julius Johnmeyer, in an action brought against them and others for damages under the Kansas securities law, K.S.A. 17-1252 *et seq.* Kircher and Johnmeyer appeal from an order denying their

motion to dismiss for lack of jurisdiction and from an order of summary judgment granted in favor of plaintiffs. The court awarded a money judgment for $38,426.00 and costs against the appellants, jointly and severally, pursuant to K.S.A. 17-1268(*a*). Appellants raise two questions on appeal: (1) Has subject matter jurisdiction been preempted by federal law in favor of a federal agency, and (2) are these individual defendants subject to in personam jurisdiction in the Kansas courts under K.S.A. 1982 Supp. 60-308(*b*)? Defendants' motions to dismiss for lack of jurisdiction were overruled at the same time that plaintiffs' motions for summary judgment were sustained.

The plaintiffs are Kansas residents. Kircher and Johnmeyer are residents of Missouri. At all times material to the instant lawsuit, Kircher and Johnmeyer were directors of Mo-Comm Futures, Inc., a Missouri corporation. Mo-Comm Futures, Inc. was originally organized for the purpose of trading in commodity futures for its own account. Sometime in 1975, following a change in management, the corporation changed its business to that of a "commodity trading advisor." The corporation would no longer trade in commodity futures for its own account but would manage and direct the investments of others in return for a fee for its services. To accomplish this goal, Mo-Comm Futures, Ltd., a Missouri limited partnership, was created. The corporation was the general partner in the limited partnership. Limited partnership shares were sold to investors for the purpose of generating an investment pool for trading in the futures market.

The plaintiffs purchased from a salesman of the corporation some of the shares available in the limited partnership. The purchases were made in Kansas and plaintiffs invested $20,000.00 for 2,000 units of the limited partnership. It is contended they purchased their interests based upon a preorganization subscription agreement which detailed the investment plan and provided information about the commodity futures business. The agreement also contained brief biographical data on Kircher and Johnmeyer as directors of the corporate general partner.

The district court, in ruling on plaintiffs' motion for summary judgment, concluded that the limited partnership interests sold to plaintiffs were securities as defined in K.S.A. 17-1252(*j*) and, as they had not been registered, their sale in Kansas was in

violation of K.S.A. 17-1255. That aspect of the trial court's ruling has not been appealed.

At the time of the sale of the limited partnership interests to the plaintiffs in 1976, the corporation operated from an office in the Board of Trade Building in Kansas City, Missouri. In 1978, the instant lawsuit was filed. Shortly thereafter operation of the corporation and the limited partnership was enjoined by a consent order of the federal Commodity Futures Trading Commission (CFTC). The corporate offices in Missouri were closed and any further activities of the corporation were handled by its chief executive officer from his home in Johnson County, Kansas. Kircher and Johnmeyer were still listed as directors when the Missouri offices were closed and further operations transferred to Johnson County.

We turn first to the question of subject matter jurisdiction and whether it has been preempted by the Commodity Exchange Act, 7 U.S.C. § 1 *et seq.* It is the contention of appellants that the federal act has vested exclusive jurisdiction over commodity futures transactions in the CFTC.

7 U.S.C. § 2 (Supp. V, 1981) provides in pertinent part:

"*Provided, That the Commission [Commodity Futures Trading Commission] shall have exclusive jurisdiction with respect to accounts, agreements* (including any transaction which is of the character of, or is commonly known to the trade as, an 'option', 'privilege', 'indemnity', 'bid', 'offer', 'put', 'call', 'advance guaranty', or 'decline guaranty'), *and transactions involving contracts of sale of a commodity for future delivery, traded or executed on a contract market designated pursuant to section 7 of this title* or any board of trade, exchange, or market, and transactions subject to regulation by the Commission pursuant to section 23 of this title: *And provided further,* That, except as hereinabove provided, nothing contained in this section shall (i) supersede or limit the jurisdiction at any time conferred on the Securities and Exchange Commission or other regulatory authorities under the laws of the United States or of any State, or (ii) restrict the Securities and Exchange Commission and such other authorities from carrying out their duties and responsibilities in accordance with such laws. *Nothing in this section shall supersede or limit the jurisdiction conferred on courts of the United States or any State.*" (Emphasis added.)

It should be noted that the provision giving the CFTC exclusive jurisdiction is limited to the accounts, agreements and transactions described in the first proviso and under the second proviso only applies to other regulatory authorities. The last sentence makes it clear that the exclusive jurisdiction of the CFTC is only operative in the enumerated circumstances and does not apply to

private actions in state court. In *Singer v. Clayton Brokerage Co. Etc.*, 620 S.W.2d 720 (Tex. Civ. App. 1981), this issue was addressed by the court. Plaintiffs brought an action to recover from a commodities broker for misrepresentation and deceptive trade practices in connection with the sale of futures contracts to plaintiff. The trial court found the CFTC had exclusive jurisdiction or at least primary jurisdiction. The decision was reversed by the Court of Civil Appeals of Texas.

In *Singer* the court stated:

"We construe the language of the statute, viewed in the light of the conference report, as providing for exclusive federal *regulation* of the field of futures trading, but not as preempting the jurisdiction of the state courts to *adjudicate* claims. We note that although the CFTC's jurisdiction, where applicable, supersedes state and federal *agency* jurisdiction, federal and state *courts* retain their respective jurisdictions. We hold that the jurisdiction of the CFTC is not exclusive of the jurisdiction of the state courts.

. . . . .

"In the light of the express language of the Act providing for state court retention of jurisdiction, however, we believe adjudication of private damage claims in state court is not such regulation as to come within the CFTC's exclusive jurisdiction to regulate." p. 723.

The trial court found that the purchase by the plaintiffs of the limited partnership interests did not involve "contracts of sale of a commodity for future delivery, traded or executed on a contract market described in the Commodity Futures Trading Commission Act of 1974" and for that reason the jurisdiction had not been preempted in favor of the CFTC. The reasoning of the trial court was based upon a line of cases which hold that the capital-raising function, prior to actual trading in the commodity futures market, is not a transaction that falls within the exclusive jurisdiction of the CFTC. *Black v. Corporation Division,* 54 Or. App. 432, 634 P.2d 1383 (1981), involved the sale of unregistered securities as in our case. The state's corporation commissioner had issued Black an order to cease and desist offering unregistered securities and Black appealed saying that the commissioner's jurisdiction was preempted by federal law because the transactions at issue involved commodity futures. The court held that the investment scheme involved the capital formation stage of raising money for a commodity pool and was not a transaction on the commodity futures market which would fall within exclusive CFTC jurisdiction. The court would not construe the exclusive jurisdiction clause in the federal act to extend to the

fund-raising transactions which in the future would result in investing in commodity futures contracts. CFTC exclusive jurisdiction was not intended to extend to the capital-raising activities which precede transactions involving commodity futures. When the capital-raising activity involves traditional forms of securities it is subject to securities regulation. *Black* was a case involving a state regulatory authority and not a private action for damages.

The trial court was not in error in finding that it had subject matter jurisdiction and that the CFTC exclusive jurisdiction provisions of 7 U.S.C. § 2 did not apply to this case.

The question of personal jurisdiction of Kircher and Johnmeyer under the long arm provisions of K.S.A. 1982 Supp. 60-308(*b*) is more difficult. The pertinent provisions of the statute read:

"Any person, whether or not a citizen or resident of this state, who in person or through an agent or instrumentality does any of the acts hereinafter enumerated, thereby submits the person and, if an individual, the individual's personal representative, to the jurisdiction of the courts of this state as to any cause of action arising from the doing of any of these acts:

"(1) transaction of any business within the state;

"(2) commission of a tortious act within this state;

. . . .

"(6) acting within this state as director, manager, trustee or other officer of any corporation organized under the laws of or having a place of business within this state . . . ."

In *Woodring v. Hall,* 200 Kan. 597, 438 P.2d 135 (1968), this court indicated the statute should be liberally construed. We said that the long arm statute

"[R]eflects a conscientious state policy to assert jurisdiction over nonresident defendants to the extent permitted by the due process clause of the Fourteenth Amendment to the Constitution of the United States." p. 602.

See also *Davis v. Grace,* 4 Kan. App. 2d 704, 709, 610 P.2d 1140 (1980), and cases cited therein. In addressing the question of personal jurisdiction the court is faced with a necessary two-step analysis. It must first be determined whether our legislature has provided jurisdiction by statute. If so, then it must be determined whether the exercise of the jurisdiction authorized under the facts of the particular case comports with the constitutional guarantee of due process of law. 4 Kan. App. 2d at 707-708.

As this matter is before us on an appeal from a motion granting

summary judgment, it is obvious there has been no trial on the merits. However, extensive discovery, including the depositions of both appellants and Gordon D. MacDonald, was completed in the trial court and is included in the record before this court.

The trial court in finding that Kircher and Johnmeyer were subject to in personam jurisdiction under the statute made, *inter alia,* the following findings:

"21. Directors, Johnmeyer and Kircher, had not resigned as directors at the time Mo-Comm had a 'place of business' in Johnson County.

"22. Defendants, Kircher and Johnmeyer, acted as directors of the corporation having a place of business within the state of Kansas.

"23. The preorganization subscription agreement of Mo-Comm Futures, Ltd. (MacDonald deposition exhibit #2) contained the publication of biographical information of the defendants Kircher and Johnmeyer and said biographical information was published with the knowledge of those defendants.

. . . .

"25. The Kansas long-arm statute authorizes service on a nonresident who serves as an officer or director of a corporation that either has a place of business in Kansas or is organized under Kansas law. J.E.M. Corp. v. McClellan, 462 F. Supp. 1246, 1251 (D. Kan. 1978)."

Thus it is obvious that the trial court in construing K.S.A. 1982 Supp. 60-308(*b*)(6) was of the opinion that merely serving as a director of a corporation having a place of business in Kansas is sufficient to subject that director to jurisdiction in Kansas.

The preorganization subscription agreement mentioned in finding 23 and used in the solicitation and sale of units in the limited partnership set forth the role of Mo-Comm Futures, Inc. as the general partner and exclusive manager of the partnership. In describing the management of the corporation, the subscription agreement stated:

"A.   Information Concerning Directors and Officers

Gordon D. MacDonald (age 31) graduated from Notre Dame University in 1970 and was employed as a computer systems analyst at a major Chicago bank and an insurance company until January 1974. From January 1974 to October 12, 1975, Mr. MacDonald was Vice President and a Director of Investment Managers Commodity Corporation of Chicago, Illinois, a management company for public and private commodity accounts. Mr. MacDonald has been registered commodity solicitor for Shatkin Trading Company since January 1974.

Glenn Kircher (age 68) has been a dairyman and farmer since 1927. He is a director of the Mid-American Dairy Association and President of the Harrisonville Milk Association.

Julius Johnmeyer (age 60) has been a farmer in Howard County Missouri

since 1936. He is the President and majority stockholder and founder of Johnmeyer Construction Company, Fayette, Missouri."

Both Kircher and Johnmeyer testified by deposition that they were not actively engaged in any of the management decisions of the corporation. Although they had served as directors since 1975, they did not attend any directors' meetings. Mr. Kircher did have contact with MacDonald on two or three occasions but no formal business was discussed with him. Kircher and Johnmeyer were not acquainted with each other and did not meet until December, 1977, when they arranged to get together in Kansas City to see if they could get some information about Mo-Comm Futures, Inc. They were becoming concerned about the lack of information and MacDonald's handling of the corporate affairs. Both defendants had prior experience in trading commodity futures and both were stockholders in the corporation. Mr. Kircher also served as a director of Kansas Commodity Traders, Inc., a Kansas corporation which also was run by MacDonald and his predecessors in office. MacDonald did not take over the management of Mo-Comm Futures, Inc., Kansas Commodity Traders, Inc., and several other business entities until 1975. Both Kircher and Johnmeyer had been named directors prior to that time and both were aware of the change in management and the decision for the corporation to change from a commodity futures investor to a manager and advisor of the limited partnership although they didn't understand the change. Neither director was aware that the limited partnership interests were being sold in Kansas. As long as they were receiving periodic dividends and some routine information in the form of computer printouts on a fairly regular basis, neither took any steps to participate in the affairs of the corporation or to fulfill their duties as directors.

MacDonald testified he took over the management of Mo-Comm Futures, Inc. in 1975. He was the sole operating officer and handled all the affairs of the corporation. He did not convene any meetings of the board of directors and neither Kircher nor Johnmeyer had anything to do with the management of the corporation. Likewise, they had no knowledge of the sale of limited partnership interests in Kansas. MacDonald had no contact with Johnmeyer and had only talked with Kircher infrequently and then not about corporate affairs.

Thus it is the argument of the appellants that as they were totally uninformed about the management and practices of the corporation in soliciting the sale of units in the limited partnership neither could have been "acting within this state" as a director. They also point out that at the time of the sale to plaintiffs, Mo-Comm Futures, Inc. was neither organized under the laws of Kansas nor did it have a place of business within Kansas. The trial court's reliance on *J.E.M. Corp. v. McClellan,* 462 F. Supp. 1246 (D. Kan. 1978), in its finding 25 was misplaced. In *J.E.M. Corp.* the United States District Court for the District of Kansas considered the question of long arm in personam jurisdiction under K.S.A. 1982 Supp. 60-308(*b*)(2). The court in attempting to illustrate the liberal and expanded application of the statute stated:

"A federal court also held that the long arm statute did not authorize service on a corporate officer or director whose only contact with the state was in his corporate capacity. *Wilshire Oil Co. v. Riffe,* 409 F.2d 1277 (10th Cir. 1969). The Kansas legislature responded with a new provision that authorizes service on any nonresident who serves as an officer or director of a corporation that either has a 'place of business' in Kansas or is organized under Kansas law. K.S.A. § 60-308(b)(6)." p. 1251.

The court's statement was pure dicta and had nothing to do with the issue before the court which concerned jurisdiction based upon a fraudulent misrepresentation without the state that resulted in tortious injury within Kansas and whether such an act constituted a tortious act within this state under K.S.A. 1982 Supp. 60-308(*b*)(2). The court in *J.E.M. Corp.,* and the trial court in this case, interpreted 60-308(*b*)(6) as if it read "[serving] as a director, manager, trustee, or other officer of any corporation, etc." Such a reading of the statute greatly expands the scope of the actual language which requires the director, manager, trustee or other officer to have been "acting within this state." If the legislature had intended that mere membership on the board of directors was sufficient to subject a corporate director to jurisdiction it could easily have said so.

We agree with defendants that K.S.A. 1982 Supp. 60-308(*b*)(6) does not confer in personam jurisdiction on them. The statutory phrase "acting within this state" requires something more than a failure to act on the part of a nonresident director. There is no showing that either Kircher or Johnmeyer acted in any way

within the State of Kansas. However, such a determination does not dispose of the issue before us.

K.S.A. 60-308(*b*)(1) and (2) provide for long arm jurisdiction over any person, whether or not a citizen or resident of this state, who in person or through an agent or instrumentality transacts business or commits a tortious act within the state which gives rise to the cause of action. While these sections of the statutes have not been addressed by the appellants on appeal, we deem it necessary to consider their application to the facts in this case. Appellees contend that the findings of the trial court, while not specific in finding jurisdiction under 60-308(*b*)(1), indicate such a determination by the trial court. The sale of unregistered securities in violation of the statutes would also be a tortious act under 60-308(*b*)(2). As we have said many times, a trial court's decision if correct will be affirmed even if it was originally based upon an incorrect reason. *Farmers State Bank v. Cooper*, 227 Kan. 547, Syl. ¶ 10, 608 P.2d 929 (1980). If there is in personam jurisdiction under any of the provisions of K.S.A. 1982 Supp. 60-308(*b*), then the trial court's decision must be affirmed.

There is no doubt that Mo-Comm Futures, Inc. was transacting business in Kansas when it sent its salesmen into Kansas to sell interests in the limited partnership. It is contended those sales were solicited, at least in part, by the use of the preorganization subscription agreement which contained information about defendants in their capacity as directors of the corporation. Mo-Comm Futures, Inc. was an instrumentality doing business in Kansas through its salesmen and agents. Does it follow that defendants, as name-only, nonparticipating directors, have transacted business within the State of Kansas or commited a tortious act within the state? We think not.

Appellees contend that the defendants submitted themselves to Kansas jurisdiction when they allowed their names and biographical data to be included in the preorganization subscription agreement, thereby aiding the advertising used to sell securities in Kansas. The record does not include any testimony of the plaintiffs or any indication that they relied upon the defendants' biographies in any way in making the determination to invest in Mo-Comm Futures, Ltd. To the contrary, the affidavits of other investors which are included in the record indicate that they did not receive the preorganization subscription agreement until *after* their investment was already made. Assuming that the

publication of the biographies of Kircher and Johnmeyer might have had some bearing upon the plaintiffs' actions, we cannot isolate one small portion of the preorganization subscription agreement. The agreement on its first page, in large type, states:

"THESE SECURITIES ARE SPECULATIVE IN NATURE AND INVOLVE A HIGH DEGREE OF RISK."

In addition, in setting forth the numerous risk factors involved, the agreement states:

*"Experience of Management.* Although Mr. MacDonald, President of the General Partner, has had several years' experience in managing commodity futures contracts, none of the other officers or directors of the General Partner have had any experience, and thus the Partnership will have to rely heavily on professional management."

Appellees further contend that because the defendants may, on occasion, have been involved in other business activities in Kansas that those activities, although not connected in any way with the sale of interests in Mo-Comm Futures, Ltd., would constitute doing business in Kansas and subject defendants to Kansas jurisdiction in this action. Such a reading of the statute is patently erroneous. *Land Manufacturing, Inc. v. Highland Park State Bank,* 205 Kan. 526, Syl. ¶ 1, 470 P.2d 782 (1970); *White v. Goldthwaite,* 204 Kan. 83, Syl. ¶ 3, 460 P.2d 578 (1969). The statute specifically requires that the transaction of business or the commission of a tortious act must be in connection with the cause of action in question. In other words, the activities of Kircher and Johnmeyer must have been in connection with the sale of the limited partnership interests to the plaintiffs. The facts that Johnmeyer may have taken construction jobs in Kansas in connection with his construction business or that both defendants had other investments in Kansas have no bearing upon the question of whether the defendants were transacting business in Kansas when the corporation, through its salesman, sold the securities to plaintiffs.

In *White v. Goldthwaite,* the court had before it the question of whether the defendant, an Oklahoma resident who was allegedly indebted to the plaintiff, was subject to long arm jurisdiction for having transacted business in Kansas. The court stated:

"In *Tilley [Tilley v. Keller Truck & Implement Corp.,* 200 Kan. 641, 438 P.2d

128 (1968)] pertinent federal decisions were reviewed to ascertain guidelines for due process limitations. They were found to include: Certain minimum contacts with the forum state so that the maintenance of the suit does not offend traditional notions of fair play and substantial justice (*Internat. Shoe Co. v. Washington,* 326 U.S. 310, 90 L.ed. 95, 66 S.Ct. 154, 161 ALR 1057); the interest of the forum in protecting its citizens, and itself, in the area of the subject matter which is the basis of the claim for relief (*Travelers Health Assn. v. Virginia,* 339 U.S. 643, 94 L.ed. 1154, 70 S.Ct. 927); the quantity and quality of defendant's contacts within the forum state (*Perkins v. Benguet Mining Co.,* 342 U.S. 437, 96 L.ed. 485, 72 S.Ct. 413); a substantial connection with the state justifying *in personam* jurisdiction (*McGee v. International Life Ins. Co.,* 355 U.S. 220, 2 L.ed.2d 223, 78 S.Ct. 199); and some act by which the defendant purposefully avails himself of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its laws (*Hanson v. Denckla,* 357 U.S. 235, 2 L.ed.2d 1283, 78 S.Ct. 1228). (pp. 644, 645)." pp. 87-88.

The court also repeated the well-known rule that:

"The party invoking the jurisdiction of a particular forum has the burden of proving existence of that jurisdiction." Syl. ¶ 4.

Thus the question of jurisdiction not only involves the statutory requirements but also the due process requirements and whether the exercise of jurisdiction comports with the "traditional notions of fair play and substantial justice." See *World-Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 62 L.Ed.2d 490, 100 S.Ct. 559 (1980); *Internat. Shoe Co. v. Washington,* 326 U.S. 310, 319, 90 L.Ed. 95, 66 S.Ct. 154 (1945).

While defendants were lax in not assuming their duties as directors and in allowing their appointment and continuation as directors when they obviously had no control or say in the management of the corporation, we cannot say that such nonfeasence constitutes the doing of business or commission of a tortious act in Kansas. As was said in *Professional Investors Life Ins. Co. v. Roussel,* 445 F. Supp. 687 (D. Kan. 1978):

"Jurisdiction over individual officers and employees of a corporation may not be predicated merely upon jurisdiction over the corporation itself." p. 698.

The seminal case in the United States Supreme Court, establishing the rule that before a nonresident corporation or individual may be subjected to in personam jurisdiction the party sought to be held liable must have had certain "minimum contacts" with the forum state, is *Internat. Shoe Co. v. Washington,* 326 U.S. 310. In that case the court in referring to the due process requirements under the Fourteenth Amendment stated:

"Whether due process is satisfied must depend rather upon the quality and nature of the activity in relation to the fair and orderly administration of the laws which it was the purpose of the due process clause to insure. That clause does not contemplate that a state may make binding a judgment *in personam* against an individual or corporate defendant with which the state has no contacts, ties, or relations." 326 U.S. at 319.

In the more recent case of *World-Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, the court again recognized the rule that certain minimum contacts with the foreign state are required before the state can exercise in personam jurisdiction over a nonresident corporation or individual. The court stated:

"Even if the defendant would suffer minimal or no inconvenience from being forced to litigate before the tribunals of another State; even if the forum State has a strong interest in applying its law to the controversy; even if the forum State is the most convenient location for litigation, the Due Process Clause, acting as an instrument of interstate federalism, may sometimes act to divest the State of its power to render a valid judgment. *Hanson v. Denckla, supra,* at 251, 254 [357 U.S. 235, 2 L.Ed.2d 1283, 78 S.Ct. 1228]." p. 294.

In *White v. Goldthwaite,* this court recognized the due process requirement of not only committing such acts as would bring a nonresident under the statute but also the need to meet federal constitutional due process requirements. The court held:

"In order to subject a defendant to a judgment *in personam* if he be not present within the territory of the forum state, he must have the minimum contacts enumerated in the statute, and whether due process is satisfied depends upon the quality and nature of the activities of the defendant, which must be determined on a case by case basis. (Following *Woodring v. Hall,* 200 Kan. 597, 438 P.2d 135.)" 204 Kan. 83, Syl. ¶ 2.

"Three basic factors must coincide if jurisdiction is to be entertained over a nonresident on the basis of transaction of business within the state. These are (1) the nonresident must purposefully do some act or consummate some transaction in the forum state; (2) the claim for relief must arise from, or be connected with, such act or transaction; and (3) the assumption of jurisdiction by the forum state must not offend traditional notions of fair play and substantial justice, consideration being given to the quality, nature and extent of the activity in the forum state, the relative convenience of the parties, the benefits and protection of the laws of the forum state afforded the respective parties, and the basic equities of the situation." 204 Kan. 83, Syl. ¶ 3.

As stated in *White,* the determination of whether the facts in a given case are sufficient to meet the statutory and constitutional requirements must be made upon a case by case basis. In *Odam*

*v. Arthur Murray, Inc.*, 5 Kan. App. 2d 612, 621 P.2d 453 (1981), the court said:

"It has been noted that essentially the same factors which enter into a determination that K.S.A. 60-308(*b*) authorizes the exercise of judicial jurisdiction are involved in deciding whether the exercise of jurisdiction is constitutionally valid. *Woodring v. Hall*, 200 Kan. 597, 603, 438 P.2d 135 (1968); *Rosedale State Bank & Trust Co. v. Stringer*, 2 Kan. App. 2d 331, 332, 579 P.2d 158 (1978)." p. 615.

While actual physical presence of the defendant within the state is not required, all the cases we have examined, state or federal, require some actual contact or action by the nonresident with the forum state. As we have already shown, Kircher and Johnmeyer had no contact with Kansas whatsoever in connection with the activities of Mo-Comm Futures, Inc., in selling the limited partnership interests in Kansas. While their total failure to assume any of the duties of a director of Mo-Comm Futures, Inc., may constitute a breach of their fiduciary duty to the corporation and its stockholders (*Newton v. Hornblower, Inc.*, 224 Kan. 506, 582 P.2d 1136 [1978]), such nonfeasance in office cannot be the basis of subjecting them to in personam jurisdiction in Kansas solely because the corporation transacted business or committed tortious acts in Kansas.

Appellees contend that liability of Kircher and Johnmeyer is established by K.S.A. 1982 Supp. 17-1268(*b*), which provides:

"(*b*) Every person who directly or indirectly controls a seller liable under subsection (*a*), every partner, officer, or director (or person occupying a similar status or performing similar functions) or employee of such a seller who materially aids in the sale, and every broker-dealer or agent who materially aids in the sale is also liable jointly and severally with and to the same extent as the seller, unless the nonseller who is so liable sustains the burden of proof that such nonseller did not know, and in the exercise of reasonable care could not have known, of the existence of the facts by reason of which the liability is alleged to exist. There is contribution as in cases of contract among the several persons so liable."

It is true that the statute establishes the basis for liability of persons involved in the sale of unregistered securities but it does not establish the jurisdiction of the court to submit such persons to liability. In the present case the court must first have in personam jurisdiction of Kircher and Johnmeyer before the statutory liability may be applied. Jurisdiction depends upon K.S.A. 1982 Supp. 60-308(*b*) and the constitutional guarantees of due process as previously discussed. There has been no showing of any act, action, or activity by either defendant in connection with

the sale of the limited partnership interests to plaintiffs which would bring them within the long arm jurisdiction of K.S.A. 1982 Supp. 60-308(*b*) or which would meet the minimum contacts necessary to satisfy federal constitutional due process requirements.

As neither Kircher nor Johnmeyer acted within this state as a director, transacted business in Kansas, or committed a tortious act in Kansas, the trial court lacked personal jurisdiction over them and the judgment entered against these individual appellants is void. Their motion to dismiss for lack of jurisdiction should have been sustained.

The judgment is reversed.

SCHROEDER, C.J., dissenting.

LOCKETT, J., concurs in the result.