(1 P.3d 333)

No. 80,074

STATE OF KANSAS, *Appellee,* v. J. SCOTT STUBER, *Appellant.*

Opinion filed March 10, 2000.

*Steven R. Zinn*, deputy appellate defender, and *Jessica R. Kunen*, chief appellate defender, for appellant.

*Doyle Baker*, assistant district attorney, *Nola Foulston*, district attorney, and *Carla J. Stovall*, attorney general, for appellee.

Before BRAZIL, C.J., GREEN, J., and WAHL, S.J., assigned.

GREEN, J.: J. Scott Stuber appeals from his convictions of four counts of unlawful acts in connection with the sale of securities, one count of acting as a broker-dealer without being registered, and one count of offering for sale unregistered securities. On appeal, Stuber argues (1) that his waiver of a jury trial was not voluntary; (2) that the trial court lacked subject matter jurisdiction because the transactions in question are subject to the exclusive jurisdiction of the Commodity Futures Trading Commission (CFTC); (3) that he is entitled to a new trial because the State charged multiple alternative allegations in the counts of unlawful acts in connection with the sale of securities; (4) that venue was lacking on one of the charges; and (5) that the trial court erred in overruling his challenge to his criminal history score. We disagree and affirm.

In December 1992, Stuber attempted to organize a corporation to be called SSI, Inc. An actual corporation was not formed, however, because another corporation had filed under the name "SSI, Inc.," and Stuber made no further efforts to incorporate after learning this fact.

Between July 1993 and January 1994, Stuber solicited funds from Thayne Botterweck, Maurice Bruenger, Larry Farber, and Paul Elder. Stuber told the investors that he was profiting from investments in various commodities and represented he would in-

vest their funds into the SSI, Inc., investment pool in exchange for a percentage of their profits. Stuber solicited more than $90,000 from Elder, $10,000 from Botterweck, $4,500 from Bruenger, and over $90,000 from Farber.

Stuber commingled the investors' money in a checking account with funds from various other sources. An investigator for the Kansas Securities Commission examined records from Stuber's account and discovered that Stuber had invested only $46,400 of the investors' money in the commodities market. Moreover, Stuber did not exclusively trade in commodities but also invested the pooled funds in stocks and mutual funds. Stuber also used the money in the investment account to pay various personal expenses.

Stuber lost all of the investment pool funds, except for $5,000 which was refunded by one broker. However, Stuber managed to deceive the investors by providing most of them with false monthly trading summaries which indicated they were making substantial profits. Botterweck and Elder lost all of the money they gave Stuber to invest. Although Stuber repaid Farber some of his money, Farber's total loss was approximately $55,000. Bruenger did not lose the money he invested, but only because the worthless check Stuber wrote him was not timely processed by the bank, and the bank reimbursed Bruenger for the face amount of the check.

When Stuber solicited money from the investors he was a convicted felon. Stuber did not tell the investors of his convictions when soliciting money from them, nor did he tell them that he was subject to several business-related civil judgments and a federal tax lien. Moreover, Stuber failed to tell the investors that SSI, Inc. was not incorporated under Kansas law, that he intended to use some of the investors' money for purposes other than investment, that he was not a registered broker-dealer, and that he had not registered the securities he was selling.

Significantly, Stuber failed to tell the investors that while he was serving as president of a corporation called Agri-Data in the early 1990's, he lost more than a million dollars of investor money and that a large portion of the investments was lost trading commodities in his personal account. See *State v. Stuber*, 25 Kan. App. 2d 254, 962 P.2d 1104, *rev. denied* 265 Kan. 889 (1998). In connection

with his Agri-Data activities, Stuber was convicted of one count of engaging in business as a broker-dealer without having been registered, one count of offering for sale unregistered securities, and two counts of unlawful acts in connection with the sale of securities. As a result, Stuber was sentenced to 2 to 5 years in the penitentiary and was ordered to pay restitution in an amount exceeding $1.5 million to two defrauded investors. On appeal, however, this court remanded to the trial court to consider the option of community corrections for Stuber.

Before trial in the instant case, Stuber moved to dismiss the charges against him, asserting that the transactions in question involved commodity pools and, as a result, the case was subject to the exclusive jurisdiction of the CFTC. Following a pretrial hearing, the trial court denied the motion to dismiss. Stuber's motion to dismiss was renewed and again overruled at trial.

After a bench trial, Stuber was found guilty of four counts of unlawful acts in connection with the sale of securities and single counts of engaging in business as an unregistered broker-dealer or agent and offering for sale unregistered securities.

*Waiver of Right to a Jury Trial*

Stuber's first argument on appeal is that he did not voluntarily waive his right to a jury trial. Specifically, Stuber contends that the trial court threatened to deny him an appeal bond if he were convicted following a jury trial. As a result, the issue presented is one of fact, and it is this court's duty to determine whether substantial competent evidence supports a finding that Stuber's waiver of a jury trial was voluntary. See *State v. Boan*, 235 Kan. 800, 805, 686 P.2d 160 (1984).

A criminal defendant has a constitutional and statutory right to a jury trial. United States Constitution, 6th Amendment; Kansas Constitution, Bill of Rights §§ 5, 10; K.S.A. 22-3403(1). The right, however, may be waived by agreement of the defendant, the prosecuting attorney, and the court. K.S.A. 22-3403(1). For the waiver of the right to a jury trial to be valid, the waiver must be "voluntarily made by a defendant who knew and understood what he was doing." *State v. Irving*, 216 Kan. 588, 589, 533 P.2d 1225 (1975).

Moreover, "in order for a criminal defendant to effectively waive his right to a trial by jury, the defendant must first be advised by the court of his right to a jury trial, and he must personally waive this right in writing or in open court for the record." 216 Kan. at 590.

Considering the instant case in light of these principles, Stuber was not denied the right to a jury trial. The transcript of Stuber's jury trial waiver indicates that Stuber voluntarily waived his right with an understanding of what he was giving up. In fact, the following discussion between the trial court and Stuber took place at the jury trial waiver hearing:

"THE COURT: Your attorney indicates that you're willing to waive your right to a jury trial in this case. What that means is that if this case goes to trial, it will be tried before a judge and you will be giving up your right to have this case tried before a jury of 12 persons; is that what you wish to do?

"MR. STUBER: Yes, I understand that, Your Honor, and that's, I guess, what I wish to do, yes."

The allegation that the trial court coerced Stuber into waiving his right to a jury trial by threatening to deny him an appeal bond if he was convicted by a jury did not arise during any part of Stuber's trial or at the sentencing hearing. In fact, the allegation surfaced nearly a year after the sentence was pronounced when Stuber raised it as an issue on appeal. As noted in the State's brief, "[s]urely, if the trial court had infringed on one of the defendant's basic constitutional rights, defense counsel would have made an issue of it on the record."

Moreover, Stuber has the burden of furnishing a record which affirmatively shows that prejudicial error occurred in the trial court. Stuber apparently attempted to comply with Supreme Court Rule 3.04 (1999 Kan. Ct. R. Annot. 23), which provides that if no official record of a proceeding is available "a party to an appeal may prepare a statement of the evidence or proceedings from the best available means, including his own recollection, for use instead of a transcript." Adverse parties may serve objections or propose amendments to the statement and "the statement with objections or proposed amendments shall be submitted to the judge of the district court for settlement and approval, and as settled and ap-

proved shall be included in the record on appeal by the clerk of the district court." Stuber, however, failed to comply with Rule 3.04 because the record on appeal does not include one statement settled and approved by the trial court, but rather numerous conflicting letters and affidavits. This court is not a finder of fact and is precluded from judging the credibility of the affidavits and letters. See *State v. Noriega*, 261 Kan. 440, 446, 932 P.2d 940 (1997). Moreover, if the letter from the trial court constitutes the "settled and approved" statement of the in-chambers discussion, the statement calls into question the validity of Stuber's affidavit. In the absence of a record which affirmatively shows that Stuber's right to a jury trial was violated, this court presumes that the action of the trial court was proper. See *State v. Moncla*, 262 Kan. 58, Syl. ¶ 2, 936 P.2d 727 (1997).

As a result, this court must focus on the statements made at the waiver hearing in deciding whether substantial competent evidence supports a finding that Stuber voluntarily waived his right to a jury trial. Because the trial court explained to Stuber the rights he was waiving by agreeing to a bench trial and because Stuber orally indicated on the record that he intended to waive his right to a jury trial, we find that Stuber's waiver was voluntary.

*Jurisdiction of the CFTC*

Stuber's second argument on appeal is that the trial court lacked subject matter jurisdiction to hear his case because the transactions at issue are subject to the exclusive jurisdiction of the CFTC. Specifically, Stuber vigorously contends that the trial court erred in denying his motion to dismiss because the transactions in question involved commodity pools and are subject to the exclusive jurisdiction of the CFTC. The issue of whether the trial court had jurisdiction over the charges filed in this case is one of law subject to unlimited appellate review. See *State v. Snelling*, 266 Kan. 986, 988, 975 P.2d 259 (1999).

The jurisdiction of the CFTC is set forth at 7 U.S.C. § 2 (1994):

"(i) The Commission shall have exclusive jurisdiction, except to the extent otherwise provided in section 2a of this title, with respect to accounts, agreements (including any transaction which is of the character of, or is commonly known to

the trade as, an "option", "privilege", "indemnity", "bid", "offer", "put", "call", "advance guaranty", or "decline guaranty"), and transactions involving contracts of sale of a commodity for future delivery, traded or executed on a contract market designated pursuant to section 7 of this title or any other board of trade, exchange, or market, and transactions subject to regulation by the Commission pursuant to section 23 of this title."

As a result, the CFTC "governs collective investment vehicles that engage in futures transactions, which are known as 'commodity pools.'" Ervin, *CFTC Regulation of Hedge Funds and Commodity Funds*, A.L.I./A.B.A. C.L.E. on Investment Management Regulation, 81 (Oct. 17, 1996).

The CFTC has consistently maintained that the Commodity Exchange Act (CEA) preempts state regulation of the operation of commodity pools. Snider, Regulation of the Commodities Futures and Options Markets § 10.07 (2d ed. 1997) (hereinafter Commodities Futures) (citing CFTC & SEC Joint Explanatory Statement [Feb. 2, 1982]; CFTC Interpretative Letter No. 77-14 [Sept. 16, 1977]). Moreover, the CFTC has further declared that state regulation of the capital formation stages of commodity pools is also preempted by the federal act. Commodities Futures § 10.07 (citing Letter from the Secretary of the CFTC to North American Securities Administration Association [Feb. 27, 1981]). As a result, the federal government has exclusive jurisdiction to regulate commodities options. Because Congress has clearly indicated that its authority is exclusive with regard to commodities regulation, the states are precluded from exercising supplementary regulatory authority over those same activities. *International Trading, Ltd., et al. v. Bell*, 262 Ark. 244, 253-54, 556 S.W.2d 420 (1977), *cert. denied* 436 U.S. 956 (1978) (citing *Northern States Power Company v. State of Minnesota*, 447 F.2d 1143 [8th Cir. 1971]; *Rice v. Santa Fe Elevator Corp.*, 331 U.S. 218, 91 L. Ed. 1447, 67 S. Ct. 1146 [1947]; *Campbell v. Hussey*, 368 U.S. 297, 7 L. Ed. 2d 299, 82 S. Ct. 327 [1961]).

Although the federal government has nearly unlimited jurisdiction to regulate commodities options, the CFTC has declared specific exceptions to the general rule and in certain unique circumstances, jurisdiction over commodities transactions remains with

the states. For example, the states may prosecute commodities fraud under general antifraud statutes. Commodities Futures § 10.19 (citing CFTC Memorandum to All State Securities Administrators [Oct. 8, 1976], *reprinted in* [1975-1977 Transfer Binder] Comm. Fut. L. Rep. [CCH] ¶ 20,218, at 21,186). The CFTC has emphasized, however, that the statutes used for this purpose must be general antifraud provisions and not part of a more narrow regulatory scheme. Commodities Futures § 10.19 (citing Speech by CFTC Vice Chairman Rainbolt, II, before the North American Securities Administrators Conference [Sept. 9, 1975]).

Nevertheless, the above-mentioned exception is not applicable to the instant case because the State did not charge Stuber under a general antifraud statute. Instead, Stuber was charged with violating narrow statutory provisions criminalizing specific acts in connection with the sale of securities.

A second exception to the general rule that the federal government has exclusive jurisdiction over commodities regulation is that the states may assert extensive jurisdiction over persons who are required to be registered under the CEA but have failed to do so. Commodities Futures § 10.19 (citing 7 U.S.C. § 16). More specifically, "anyone who should be registered with the CFTC but is not in fact registered is fair game for state and federal enforcement agencies." Commodities Futures § 10.19.

To determine whether this exception is applicable to the instant case it is first necessary to address whether Stuber was required to be registered with the CFTC. The CEA defines a "commodity pool operator" as

"any person engaged in a business that is of the nature of an investment trust, syndicate, or similar form of enterprise, and who, in connection therewith, solicits, accepts, or receives from others, funds, securities, or property, either directly or through capital contributions, the sale of stock or other forms of securities, or otherwise, for the purpose of trading in any commodity for future delivery on or subject to the rules of any contract market. . . ." 7 U.S.C. § 1a(4) (1994).

In other words, a commodity pool operator "is a person who solicits funds from others for the purpose of pooling the funds . . . for use in investing in commodity interests." Commodities Futures § 5.06. An individual who meets the statutory definition of a com-

modity pool operator is subject to regulation by the CFTC unless excluded by the CEA. Commodities Futures § 5.06.

We find that Stuber qualifies as a commodity pool operator as defined by the CEA because he engaged in a business that was of the nature of an investment trust and solicited and accepted funds from his investors to be used in the trading of commodities. See 7 U.S.C. § 1a(4) (1994). Thus, Stuber's commodities transactions are subject to the exclusive jurisdiction of the CFTC. In addition, it is important to note that even if the commodities transactions Stuber engaged in were excluded from the registration requirement (which they are not), Stuber would nevertheless be subject to regulation by the CFTC because he did not file a notice of eligibility. See 50 Fed. Reg. 15868 (1985); Commodities Futures § 5.06.

Stuber's qualification as a commodity pool operator is not affected by the fact that the pooled account agreement between him and the investors granted him discretion to trade in non-commodities futures and that Stuber invested in stocks and mutual funds. The federal regulations do not specify that an investment pool must trade solely in commodities for the manager of that pool to qualify as a commodity pool operator. See 7 U.S.C. § 1a(4) (1994). As a result, even though Stuber did not trade exclusively in commodities, he nevertheless qualifies as a commodity pool operator. Because Stuber was required to register as a commodity pool operator under the CFTC regulations but failed to do so, we find that the State had extensive jurisdiction to prosecute Stuber's actions.

*Prosecution under the Kansas Securities Act*

Although the State had jurisdiction to prosecute Stuber for his fraudulent actions, the State was nevertheless required to prosecute Stuber under the proper statutes. Thus, the issue remains whether the State properly prosecuted Stuber for violating state securities statutes.

Stuber was found guilty of violating K.S.A. 17-1253 (Ensley), which prohibits unlawful acts in connection with the offer, sale, or purchase of securities. In addition, Stuber was also convicted of engaging in business as a broker-dealer without being registered

and offering for sale unregistered securities. The term "security" is defined in the Kansas statutes as

"any note; stock; treasury stock; bond; debenture; evidence of indebtedness; certificate of interest or participation in any profit-sharing agreement; collateral-trust certificate; preorganization certificate or subscription; transferable share; investment contract; voting-trust certificates; thrift certificates or investment certificates, or thrift notes issued by investment companies; certificate of deposit for a security; certificate of interest in oil and gas royalties, leases or mineral deeds; or, in general, any interest or instrument commonly known as a 'security,' or any certificate of interest or participation in, temporary or interim certificate for, guarantee of, or warrant or right to subscribe to or purchase, any of the foregoing." K.S.A. 17-1252(j) (Ensley).

Although the transactions at issue involve both commodities and non-commodities investments, the State asserts that the transactions in question violate the Kansas securities statutes. To support its position, the State cites *Schlatter v. Mo-Comm Futures, Ltd.*, 233 Kan. 324, 329, 662 P.2d 553 (1983), which held that when a capital-raising activity involves traditional forms of securities, it is subject to securities regulation under the Kansas securities laws.

*Schlatter*, however, is distinguishable from the case at issue in that *Schlatter* involved the selling of shares in a limited partnership for the purpose of pooling the funds to invest in the futures market, and the sale of limited partnership interests always involves the sale of securities. See *State v. Ribadeneira*, 15 Kan. App. 2d 734, 739, 817 P.2d 1105, *rev. denied* 249 Kan. 778 (1991). In our case, however, there was no sale of partnership shares but merely a pooling of funds into an investment account.

Furthermore, the *Schlatter* court recognized that "CFTC exclusive jurisdiction was not intended to extend to the capital-raising activities which *precede* transactions involving commodity futures." (Emphasis added.) 233 Kan. at 329. In the case at issue, Stuber's capital-raising activities did not precede the investment transactions involving commodities futures, but rather were interspersed with the investments. As a result, *Schlatter* does not support the State's position that the transactions in question constitute state securities violations.

The State additionally attempts to characterize the transactions in question as securities transactions by labeling them investment contracts. Under K.S.A. 17-1252(j), the definition of "security" includes an investment contract. An investment contract is generally defined as a contractual arrangement involving the investment of money in a common enterprise with the profits to come from the efforts of others. *Activator Supply Co. v. Wurth*, 239 Kan. 610, Syl. ¶ 4, 722 P.2d 1081 (1986). Kansas courts, however, have not addressed whether transactions similar to those at issue qualify as investment contracts.

Before analyzing whether the elements of an investment contract are satisfied in the instant case, it is necessary to address how the transactions in question can be labeled as commodities transactions under the federal regulatory scheme and also characterized as securities transactions for purposes of the state statutes. Although Stuber labels the transactions at issue as involving a commodity pool, the "pooled account agreement" Stuber executed with the investors clearly indicates that Stuber was not limited to investments in commodities futures. In fact, the pooled account agreement permits Stuber "to execute trades in [the investor's] behalf without any verbal or written authority from [the investor] and at SSI, Inc.'s discretion in accordance with the terms of this Agreement."

Moreover, the pooled account agreement does not list the types of investments Stuber was limited to, nor does it in any way confine the investments to the commodities market. In addition, Stuber's contracts with the three brokerage firms did not limit him to commodities investments. In fact, Stuber exercised wide investment discretion by investing in stocks and mutual funds under the name SSI, Inc. Thus, under the terms of the account agreements, Stuber not only had the discretion to invest in non-commodities, but he did in fact engage in non-commodities transactions. *Cf. Gordon v. Terry*, 684 F.2d 736, 740-41 (11th Cir. 1982), *cert. denied* 459 U.S. 1203 (1983) (holding that nondiscretionary investment contracts are not securities); *State v. Ameen*, (No. 81,373, filed March 10, 2000) (same).

These non-commodities investment activities destroy Stuber's contention that the investment account was a commodity pool. Moreover, since Stuber did not segregate the investors' funds into an account separate from his personal checking account, Stuber cannot argue that the non-commodities investments were purchased with his personal funds rather than money from the investment pool. As a result, the investment pool Stuber operated can constitute an investment contract under the Kansas securities statutes, even though under the federal regulatory scheme Stuber qualifies as a commodity pool operator.

Because Stuber's investments were not limited to commodities, these transactions could qualify as investment contracts so as to bring them within the regulatory scope of the Kansas securities statutes. For example, the first element of an investment contract, an investment of money, is satisfied in the instant case. Here, the investors gave Stuber funds to be invested in the pooled account. Second, the transactions must involve a common enterprise in that the fortunes of the investors are interwoven with and dependent on the efforts and success of Stuber. See *Activator Supply*, 239 Kan. at 618-19. The investors' fortunes were dependent on Stuber's efforts because Stuber was to use his "expertise" when investing the funds. Moreover, the investors' success was interwoven with Stuber's success in that Stuber's contract with the investors was structured as a profit-sharing agreement. For example, if the investments were profitable, Stuber was entitled to 25% of the investors' profit. In addition, the third element of an investment contract is also satisfied because the investors gave Stuber their money with the expectation of future profits. Finally, the last requirement of an investment contract is fulfilled because the future profits were to come from the efforts of others, namely Stuber. As a result, we find that the investment pool qualifies as an investment contract and, thus, as a security.

A cursory examination of the facts at issue might suggest that the State erred in charging Stuber with securities violations because his activities supposedly involved only commodities. However, because Stuber's pooled account agreement did not limit him to only commodities investments and because Stuber did not ex-

clusively trade commodities, Stuber's investment activities made him subject to the Kansas securities statutes. As a result, because the State had extensive jurisdiction to prosecute Stuber's activities under the exception permitting the State to prosecute those individuals who are required to register under the CFTC but failed to do so, the State had jurisdiction to prosecute Stuber's fraudulent activities and did so under the proper statutes. As a result, Stuber's argument fails.

### Sufficiency of the Evidence

Stuber's third argument on appeal is that he is entitled to a new trial because the State charged multiple alternate allegations in the counts of unlawful acts in connection with the sale of securities and the trial court did not specify the basis for its verdict as to each count. Stuber contends that the trial court's lack of specificity is problematic as there is insufficient evidence to convict him of the counts of unlawful acts in connection with the sale of securities. When the sufficiency of the evidence is challenged in a criminal case, the standard of review is whether, after review of all the evidence, viewed in the light most favorable to the prosecution, an appellate court is convinced that a rational factfinder could have found the defendant guilty beyond a reasonable doubt. *State v. Johnson*, 266 Kan. 322, 326, 970 P.2d 990 (1998).

First, Stuber contends that a conviction under K.S.A. 17-1253(a)(2) cannot, as a matter of law, be based on a failure to disclose information which he was under no legal obligation to disclose. K.S.A. 17-1253(a)(2) makes it a crime for any person in connection with the sale of any security to "make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they are made, not misleading."

In the previous criminal appeal brought by Stuber, this court held that Stuber's failure to disclose his prior convictions to purchasers of securities violated K.S.A. 17-1253(a)(2). *Stuber*, 25 Kan. App. 2d at 258. This court rationalized that the purpose of the Kansas Securities Act, K.S.A. 17-1252 *et seq.*, is to place promotion

and dealing of speculative securities under rigid government control:

"We conclude that permitting the seller of speculative securities to fail to disclose his or her convictions for crimes involving dishonesty could not possibly comport with the intent of the Kansas Securities Act. We believe that in order to carry out the stated purpose of the Kansas Securities Act, a seller of securities must disclose his or her criminal history to prospective buyers of the security. In the sale and purchase of securities, the honesty and integrity of the seller is of utmost importance. While having a criminal record may not necessarily mean the seller is dishonest and untrustworthy, it is certainly material in giving the buyer sufficient information to make a judgment on the facts he or she is told by the seller. We hold that a seller of securities commits an unlawful act in connection with that sale, under K.S.A. 1997 Supp. 17-1253(a)(2), by failing to disclose his or her criminal history to a prospective buyer, particularly when that history consists of convictions for crimes of dishonesty. A seller of securities under the Kansas Securities Act is intended to be an individual on whom the buyer may rely. This is an appearance which is made misleading by the failure of the seller to disclose his or her criminal background." 25 Kan. App. 2d at 258.

Stuber contends that his previous criminal appeal was wrongly decided and relies on Judge Pierron's dissent in that case. Judge Pierron dissented in *Stuber* because he believed the majority was reading a requirement into the statute that the legislature had not intended:

"The statutes of Kansas contain many provisions requiring a person with criminal convictions to disclose that information. This is not specifically required of a person selling securities. Given that the legislature obviously knows how to write in this requirement, a court inserting it into a criminal statute is not appropriate." 25 Kan. App. 2d at 266-67 (Pierron, J., dissenting).

The problem with the above-mentioned dissent and Stuber's position on this issue is that both fail to recognize that many statutes are written in language that, while not unconstitutionally vague, are necessarily broad in scope to cover a myriad of factual situations. For example, the battery statute proscribes intentional physical contact "when done in a rude, insulting or angry manner." K.S.A. 1999 Supp. 21-3412(a)(2). The child abuse statute proscribes "cruelly beating" and "inflicting cruel and inhuman corporal punishment." K.S.A. 21-3609. The indecent liberties with a child statute proscribes "lewd fondling or touching." K.S.A. 21-

3503(a)(1). If the aforementioned statutes attempted to list specific prohibited acts, the list would be "massive in length and never complete." See *State v. Ponce*, 258 Kan. 708, 713, 907 P.2d 876 (1995).

Moreover, *State v. Bailey*, 251 Kan. 156, 171, 834 P.2d 342 (1992), addressed whether the aggravating factors used to justify a mandatory 40-year prison term for first-degree murder were unconstitutionally vague. The *Bailey* court held that the factors of creating a "great risk" of death to more than one person and committing the crime in an "especially heinous, atrocious or cruel manner" were not unconstitutionally vague. 251 Kan. at 173-74. The court noted: "It would be impossible to devise a laundry list of particular forms of killing that would encompass the intended subject. Thus, the statute has to rely on adjectives." 251 Kan. at 174.

The logic used in *Bailey* is also applicable in the instant case. It would be impossible to devise a complete list of facts that should be disclosed in connection with the offer, sale, or purchase of securities. As with other statutes, the Kansas Securities Act has to rely on an adjective to encompass the facts that must be disclosed: all "material" facts. K.S.A. 17-1253(a)(2).

Our Supreme Court, in denying review of Stuber's previous criminal appeal, effectively approved of this court's holding that a defendant's failure to disclose his criminal convictions to investors amounts to the omission of a material fact. As a result, Stuber's conviction under K.S.A. 17-1253(a)(2) can be based on his failure to disclose his criminal history because Stuber was under a legal obligation to disclose such information.

Stuber further contends that it is impossible to determine whether the trial court relied on legally sufficient grounds when convicting him under K.S.A. 17-1253(a)(2) because the trial court did not specify which of the multiple alternate allegations provided the basis for the convictions. Stuber alleges that because some of the multiple alternate allegations under which he was charged are legally insufficient to support his conviction, that portion of the verdict cannot be upheld.

To support his position on this issue, Stuber cites *Griffin v. United States*, 502 U.S. 46, 59, 116 L. Ed. 2d 371, 112 S. Ct. 466 (1991), which rationalized:

"Jurors are not generally equipped to determine whether a particular theory of conviction submitted to them is contrary to law—whether, for example, the action in question is protected by the Constitution, is time barred, or fails to come within the statutory definition of the crime. When, therefore, jurors have been left the option of relying upon a legally inadequate theory, there is no reason to think that their own intelligence and expertise will save them from that error."

The fallacy of Stuber's argument is that his case was not decided by a jury, but rather by the bench. The trial court made the finding that Stuber violated K.S.A. 17-1253(a)(2), and it can be assumed that, unlike a jury, the bench possessed sufficient intelligence and expertise to rely on a legally adequate theory.

Moreover, each of the facts listed in the second amended information are, in fact, material facts which Stuber should have disclosed to the investors. The facts Stuber failed to tell his investors, such as his outstanding civil judgments and a tax lien, are omissions of material facts because the defrauded investors indicated that the omitted facts would have been significant in deciding whether to purchase securities from Stuber. See *Branch-Hess Vending Serv. Emp. Pen. Tr. v. Guebert,* 751 F. Supp. 1333, 1340 (C.D. Ill. 1990). As a result, even though the trial court failed to specify its basis for finding that Stuber violated K.S.A. 17-1253(a)(2), the bench relied on legally sufficient grounds for the convictions because all of the omissions listed in the second amended information are omissions of material facts.

Next, Stuber claims that he is not guilty of unlawful acts in connection with the sale of securities with respect to Elder and Farber because essential elements of the crime occurred before the dates alleged in the second amended information. Specifically, Stuber contends that the "sale" of securities to Farber and Elder occurred when these investors signed their pooled account agreements with SSI, Inc. Stuber insists that because these agreements were signed prior to the dates set forth in the State's second amended information, any misrepresentations or omissions which occurred in relation to the sales to Farber and Elder cannot be based on K.S.A. 17-1253(a)(2).

The Kansas Securities Act defines a "sale" as "every contract of sale, contract to sell, or disposition of, a security or interest in a

security for value." K.S.A. 17-1252(h)(1). In addition, the act defines "offer" as "every attempt or offer to dispose of, or solicitation of an offer to buy, a security or interest in a security for value." K.S.A. 17-1252(h)(2). The State presented evidence that Farber gave Stuber money to invest on four occasions between July 1, 1993, and January 18, 1994, the dates alleged in the State's second amended information. Moreover, the State also presented evidence that Elder gave Stuber funds to invest at least two different times between July 1, 1993, and December 9, 1993.

As a result, because Stuber was convicted of "unlawful acts in connection with the offer, sale, or purchase of securities" there is sufficient evidence to support Stuber's conviction on the counts relating to Elder and Farber in that Stuber offered and sold securities to these investors within the meaning of the Kansas Securities Act as alleged in the second amended information.

Next, Stuber contends that there is insufficient evidence to show that he used an artifice to defraud Botterweck because the State presented no evidence that Stuber gave Botterweck a bogus monthly trading summary.

K.S.A. 17-1253(a)(1) prohibits the use of any "device, scheme or artifice to defraud" in connection with the offer, sale or purchase of any security. While the false trading summaries Stuber gave to some of the investors provided proof of Stuber's fraudulent scheme, the lack of such summaries in Botterweck's case does not undermine Stuber's conviction. Because K.S.A. 17-1253(a) is written in the disjunctive, a defendant can violate the statute without using a device or artifice, if he or she operates a scheme that defrauds an investor. As a result, even though Stuber did not provide Botterweck with a bogus monthly trading summary, Stuber was properly convicted under K.S.A. 17-1253(a)(1) because there is sufficient evidence that he operated a scheme to defraud Botterweck.

Stuber further contends that because the State did not articulate the basis for the charges under K.S.A. 17-1253(a)(3), it cannot be determined from the trial court's findings whether Stuber's convictions for unlawful acts in connection with the sale of securities were based on K.S.A. 17-1253(a)(1) or (3).

Stuber's contention is without merit. The trial court's finding that Stuber was guilty of unlawful acts in connection with the sale of securities under all three alternative subsections of K.S.A. 17-1253(a) is supported by sufficient evidence. The fact that the State failed to explain in its closing argument how Stuber violated K.S.A. 17-1253(a)(3) is irrelevant to the trial court's finding. Moreover, although the trial court merely made a general finding that Stuber defrauded the investors, the evidence supports the finding that Stuber's fraudulent activities violated all three subsections of K.S.A. 17-1253(a). As a result, it is irrelevant that the trial court failed to specify its basis for the finding that Stuber violated K.S.A. 17-1253(a)(3), and Stuber's convictions for unlawful acts in connection with the sale of securities are affirmed.

*Venue Over Charge Relating to Sale of Securities to Sumner County Resident*

Next, Stuber argues that the trial court did not have venue over the charge of unlawful acts in connection with the sale of securities to Elder, a Sumner County resident. Specifically, Stuber contends that because all of his contacts with Elder took place at Elder's residence in Sumner County, venue was improper in Sedgwick County.

The resolution of this issue requires the interpretation and application of the statute prohibiting unlawful acts in connection with the sale of securities as it relates to venue under the provisions of K.S.A. 22-2602. Statutory interpretation is a question of law, and this court has unlimited review of questions of law. See *State v. Jurdan*, 258 Kan. 848, 850, 908 P.2d 1309 (1995).

The general rule of venue is that venue lies in the county where a criminal act occurs. K.S.A. 22-2602. However, "[w]here two or more acts are requisite to the commission of any crime and such acts occur in different counties the prosecution may be in any county in which any of such acts occur." K.S.A. 22-2603. Thus, where one or more elements of a crime occur in one county and other elements of that crime take place in a second county, venue properly lies in either county. See *State v. Korbel*, 231 Kan. 657, Syl. ¶ 3, 647 P.2d 1301 (1982).

Although the Kansas appellate courts have not addressed the issue of venue with regard to the crime of unlawful acts in connection with the sale of securities, decisions regarding venue as to other crimes provide a helpful analogy. First, *State v. Cuezze, Houston & Faltico*, 225 Kan. 274, 589 P.2d 626 (1979), addressed whether the trial court had venue over the charge of making a false writing. The defendant contended that the trial court in Wyandotte County lacked venue because the falsified application was filed in Shawnee County. The court held that "assuming the alleged false application was partially prepared in Wyandotte County and completed and filed in Shawnee County, the venue of the charges would lie in either county." 225 Kan. at 281.

*Cuezze* relied on an early Kansas Supreme Court case, *State v. Mason*, 61 Kan. 102, 58 Pac. 978 (1899), in making its decision. The issue presented in *Mason* was whether the trial court in Marion County had jurisdiction over the defendant's charges of making false statements and reports to the state bank commissioner. The defendant asserted that Marion County lacked venue because the reports were to be filed with the bank commissioner in Shawnee County. Our Supreme Court rejected Mason's argument and held that venue was proper in Marion County because "[t]he principal steps in the transaction were taken in Marion county; the statement and report were prepared there; it was subscribed and sworn to in Marion county, and before a notary public of that county." 61 Kan. at 109. The *Mason* court concluded that "the offense has been committed partly in each of the counties named, and . . . jurisdiction is in either county." 61 Kan. at 109.

The *Cuezze* court also cited *In re Myers*, 119 Kan. 270, Syl. ¶ 1, 237 Pac. 1026 (1925), *overruled in part on other grounds State v. Breitenbach*, 190 Kan. 189, 373 P.2d 601 (1962), which held that "[w]here a worthless check is given by the maker in lieu of a similar worthless check for the same amount [and] both checks being issued in apparent violation of [a criminal statute], and the second check is executed in one county and transmitted by United States mail to the payees in another county, the jurisdiction of the offense is in either county."

After consideration of the above-mentioned precedents, we find that Stuber committed elements of the crime of unlawful acts in connection with the sale of securities in both Sedgwick and Sumner Counties and, thus, the trial court in Sedgwick County had venue over the charge at issue. The principal acts in connection with the unlawful sale of securities to Elder were conducted in Sedgwick County. Specifically, Stuber kept an office in Sedgwick County from which he operated his fraudulent scheme; he had telephone discussions with Elder from Sedgwick County; he prepared bogus monthly trading reports and mailed them via United States mail to Elder from Sedgwick County; and he deposited the checks he received from Elder into a checking account in Sedgwick County.

As a result, there is substantial evidence that Stuber committed each alternative element of K.S.A. 17-1253(a) in Sedgwick County, and the trial court had venue over the charge at issue. Thus, Stuber's conviction for unlawful acts in connection with the sale of securities to a Sumner County resident is affirmed.

*Challenge to Criminal History Score*

Finally, Stuber contends that the trial court erred in denying his challenge to his criminal history score. Specifically, Stuber argues that his convictions for one count of gambling and two counts of giving a worthless check should not be used as part of his criminal history because those convictions were set forth in the complaint as elements of the crimes charged and cannot be used to calculate his criminal history score. Stuber acknowledges that the real issue is whether the worthless check convictions should be counted in his criminal history because the gambling conviction does not affect his criminal history score since it is a misdemeanor conviction.

As a general rule, interpretation of the Kansas Sentencing Guidelines Act is a question of law, and the appellate court's scope of review is unlimited. *State v. Bolin*, 266 Kan. 18, 24, 968 P.2d 1104 (1998). In this case, however, the general rule does not apply because the question Stuber raises is moot and, therefore, unreviewable. An issue becomes moot when the judgment of the appellate court on the issue would be of no consequence. *Sheila A. v. Finney*, 253 Kan. 793, 797, 861 P.2d 120 (1993).

The trial court found that Stuber's criminal history score was category "E" based on six nonperson felonies: two felony convictions for giving a worthless check and four convictions stemming from Stuber's fraudulent Agri-Data activities. A defendant's criminal history score is scored "E" when the offender's criminal history includes three or more adult convictions for nonperson felonies, but no convictions for a person felony. K.S.A. 21-4709.

In his brief, Stuber concedes that even without the convictions set forth in the complaint, his criminal history score would still be "E" based on four nonperson felonies. Nevertheless, Stuber argues that the question of whether the worthless check convictions should have been included in his criminal history is not moot because the remaining four nonperson felony convictions stemming from his involvement in Agri-Data are currently before the Kansas Supreme Court on a petition for review. Stuber contends that "[i]f the Supreme Court were to reverse some or all of those convictions, the question of whether the worthless check convictions should be included in his criminal history would take on major significance."

The fallacy of Stuber's argument is that our Supreme Court denied his petition for review of the Agri-Data convictions before the filing of his brief in the instant case. See *State v. Stuber*, 25 Kan. App. 2d 254, 962 P.2d 1104, *rev. denied* 265 Kan. 889 (1998). Giving Stuber the benefit of the doubt, however, our Supreme Court denied review of Stuber's Agri-Data case the day before he filed his brief for this case, and he might not have known that review of the Agri-Data case was denied. Even so, Stuber neglected to inform this court upon learning that this issue was moot.

As a result, this court refuses to review the present issue because the question raised is moot in that Stuber's criminal history score would not be affected by this court's finding that the trial court erred in considering the felony convictions listed in the State's complaint against Stuber.

Affirmed.