Joseph Scott **STUBER**, Petitioner,

v.

**Mike HILL, Sedgwick County Sheriff, and Carla Stovall, Kansas Attorney General, Respondents.**

No. 01–3060–DES.

United States District Court,
D. Kansas.

Oct. 26, 2001.

---

Joseph D. Johnson, Joseph D. Johnson, Chartered, Topeka, KS, Melanie S. Morgan, Olathe, KS, for Joseph Scott Stuber.

Joseph Scott Stuber, Hutchinson, KS, pro se.

Kristafer R. Ailslieger, Office of Atty. Gen., Topeka, KS, for Mike Hill, Attorney General of Kansas.

### *MEMORANDUM AND ORDER*

SAFFELS, District Judge.

This matter is before the court on petitioner's writ for habeas corpus filed pursuant to 28 U.S.C. § 2254 (Doc. 1). Petitioner appeals his convictions of four unlawful acts in connection with the sale of securities, one count of acting as a broker-dealer without being registered, and one count of

offering for sale unregistered securities. Respondents have filed an Answer and Return (Doc. 12), and petitioner has filed a Traverse (Doc. 22). The court has reviewed the record and is prepared to rule on the petition.

## I. PROCEDURAL HISTORY

On September 4, 1997, petitioner was convicted in Sedgwick County District Court of four counts of unlawful acts in connection with the offer, sale, or purchase of securities in violation of Kansas Statutes Annotated § 17–1253, one count of engaging in business as a broker-dealer/agent without having been registered in violation of Kansas Statutes Annotated § 17–1254; and one count of offering for sale unregistered securities in violation of Kansas Statutes Annotated § 17–1255. Petitioner was sentenced to sixty months imprisonment for the above convictions.

Before trial, however, petitioner moved to dismiss the charges against him, asserting the transactions in question involved commodity pools and, as a result, the case was subject to the exclusive jurisdiction of the Commodities Futures Trading Commission ("CFTC"). Following a pretrial hearing, the trial court denied the motion to dismiss. Petitioner's motion to dismiss was renewed and again overruled at trial. His subsequent convictions followed.

On October 27, 1997, petitioner appealed his convictions to the Kansas Court of Appeals. While petitioner's case was on appeal, he was released on an appeal bond. On appeal, petitioner alleged: (1) his waiver of jury trial was coerced by the trial judge and therefore involuntary; (2) the trial court lacked subject matter jurisdiction; and (3) because the State charged multiple alternate allegations, it could not be determined whether the trial court relied on appropriate or inappropriate factors in finding petitioner guilty, warranting a new trial.

On October 1, 1998, the Kansas Court of Appeals remanded petitioner's case to the trial court for the purpose of reconstructing the record regarding a conversation that took place in chambers involving petitioner's attorneys, the district attorney, and the trial judge. The subject of the conversation included the likelihood of petitioner receiving an appeal bond in the event of conviction. Petitioner's attempt to reconstruct the record included submission of conflicting affidavits and letters concerning the content of the conversation.

On March 10, 2000, the Kansas Court of Appeals affirmed petitioner's conviction in a written opinion. *State v. Stuber,* 27 Kan. App.2d 160, 1 P.3d 333 (2000). On June 13, 2000, the Kansas Supreme Court denied review, and on October 16, 2000, the United States Supreme Court denied certiorari, *Stuber v. Kansas,* 531 U.S. 945, 121 S.Ct. 343, 148 L.Ed.2d 275 (2000). Finally, on February 21, 2001, petitioner filed an application for federal habeas relief pursuant to 28 U.S.C. § 2254 before this court.

## II. FACTUAL BACKGROUND

The following facts are taken largely from the Kansas Court of Appeals decision. *See Stuber,* 1 P.3d at 336–37.

In December 1992, petitioner attempted to organize a corporation to be called SSI, Inc. An actual corporation was not formed, however, because another corporation had filed under the name "SSI, Inc." Petitioner made no further efforts to incorporate after learning this fact, but continued to use the name, SSI, Inc.

Between July 1993 and January 1994, petitioner solicited funds from Thayne Botterweck, Maurice Bruenger, Larry Farber, and Paul Elder, among others. Petitioner told the investors he was profit-

ing from investments in various commodities and represented he would invest their funds into the SSI, Inc. investment pool in exchange for a percentage of their profits. Petitioner solicited more than $90,000 from Elder, $10,000 from Botterweck, $4,500 from Bruenger, and over $90,000 from Farber. Petitioner's solicited a total of $318,620 from more than fifteen investors according to Rodney Wake, an investigator for the Kansas Securities Commission.

Petitioner commingled the investors' money in a checking account with funds from various other sources. Mr. Wake examined records from petitioner's account and discovered he had invested only $46,400 of the investors' money in the commodities market. Moreover, petitioner did not exclusively trade in commodities but also invested the pooled funds in stocks and mutual funds. Petitioner also used the money in the investment account to pay various personal expenses.

Petitioner lost all of the investment pool funds, except for $5,000 which was refunded by one broker. Petitioner managed to deceive the investors by providing most of them with false monthly trading summaries indicating they were making substantial profits. Botterweck and Elder lost all of the money they gave petitioner to invest. Although petitioner repaid Farber some of his money, Farber's total loss was approximately $55,000. Bruenger did not lose the money he invested, but only because the worthless check petitioner wrote him was not timely processed by the bank, and the bank reimbursed Bruenger for the face amount of the check.

When petitioner solicited money from the investors he was a convicted felon. Petitioner did not tell the investors of his convictions when soliciting money from them, nor did he tell them he was subject to several business-related civil judgments and a federal tax lien. Moreover, petition-er failed to tell the investors that SSI, Inc. was not incorporated under Kansas law, that he intended to use some of the investors' money for purposes other than investment, that he was not a registered broker-dealer, and that he had not registered the securities he was selling.

After a bench trial, petitioner was found guilty of four counts of unlawful acts in connection with the sale of securities and single counts of engaging in business as an unregistered broker-dealer or agent and offering for sale unregistered securities. Petitioner was sentenced to sixty months imprisonment.

## IV. PETITIONER'S CLAIMS

Petitioner's claims for federal habeas relief are as follows:

I. The exclusive regulatory jurisdiction of the Commodity Futures Trading Commission (CFTC) preempts the Kansas Securities Act depriving Kansas of subject matter jurisdiction in a criminal case concerning commodities.

II. To require an accused to prove lack of jurisdiction shifts the burden of proof from the prosecution to the accused in violation of the individual's right under the Sixth and Fourteenth Amendments to the United States Constitution.

III. Petitioner's waiver of right to a jury trial was involuntary in that it was coerced by the trial court's threat to deny him an appeal bond if he were convicted following the jury trial.

(Pet. for Writ of Habeas Corpus, at 4, 7, 10).

## V. STANDARD OF REVIEW

Under 28 U.S.C. § 2254, a federal court is precluded from granting habeas relief on any claim adjudicated by a state court, unless the state court's proceeding "result-

ed in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court," 28 U.S.C. § 2254(d)(1), or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," 28 U.S.C. § 2254(d)(2). *See Williams v. Taylor*, 529 U.S. 362, 405–13, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000) (construing the review standard in 28 U.S.C. § 2254).

A state court's decision is "contrary to" an established federal law if the state court reaches a different result than the Supreme Court would when presented with facts that are "materially indistinguishable from a relevant Supreme Court precedent" or if the state court "applies a rule that contradicts the governing law set forth in Supreme Court cases." *Williams*, 529 U.S. at 405, 120 S.Ct. 1495.

■ Additionally, the Supreme Court has clearly dictated that "it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions." *Estelle v. McGuire*, 502 U.S. 62, 67–68, 112 S.Ct. 475, 116 L.Ed.2d 385 (1991). Federal habeas actions do not provide relief for errors of state law. *See id.* (citing *Lewis v. Jeffers*, 497 U.S. 764, 780, 110 S.Ct. 3092, 111 L.Ed.2d 606 (1990)).

## VI. DISCUSSION

### A. State Jurisdiction

Petitioner's first point of contention is the state of Kansas lacked subject matter jurisdiction because the transactions at issue were subject to the exclusive jurisdiction of the CFTC. In response, respon-

dents argue because petitioner failed to comply with the provisions of the federal regulatory scheme set forth in the Commodities Exchange Act ("CEA"), 7 U.S.C. §§ 1–27f, and the rules promulgated by the CFTC, he excepted himself from its exclusive jurisdiction, allowing the state court to exercise jurisdiction. *See* 7 U.S.C. § 16(e).

The court of appeals found the state had properly exercised jurisdiction, but disagreed with the method by which the trial court found jurisdiction. The trial court exercised jurisdiction based on *Schlatter v. Mo–Comm Futures, Ltd.*, 233 Kan. 324, 662 P.2d 553, 557 (1983), which held when a capital-raising activity involves traditional forms of securities, it is subject to the securities regulation under the Kansas securities laws. The court of appeals rejected the *Schlatter* case as a basis for state jurisdiction and instead found state jurisdiction was proper because petitioner was required to register with the CFTC and failed to do so. *See* 7 U.S.C. § 16(e)(1)(C).[1] Petitioner's claim of error rests on the fact that the CFTC was granted exclusive jurisdiction for all commodity transactions.

■ The exclusive jurisdiction granted to the CFTC is set forth in 7 U.S.C. § 2, which states:

The Commission shall have exclusive jurisdiction, except to the extent otherwise provided in section 2a of this title, with respect to accounts, agreements (including any transaction which is of the character of, or is commonly known to the trade as, an "option", "privilege", "indemnity", "bid", "offer", "put", "call", "advance guaranty", or "decline guaranty"), and transactions involving contracts

---

1. The statute in question, 7 U.S.C. § 16(e), was amended on December 21, 2000, Pub.L. 106–554, 114 Stat. 2763 (2000). Prior to the amendment, the relevant section in the statute was located at 7 U.S.C. § 16(e)(3). Because the relevant language in the statute remained unchanged the court will refer to the new section of the statute–7 U.S.C. § 16(e)(1)(C).

of sale of a commodity for future delivery, traded or executed on a contract market designated pursuant to section 7 of this title or any other board of trade, exchange, or market, and transactions subject to regulation by the Commission pursuant to section 23 of this title.

Courts interpreting this statutory grant of jurisdiction have determined Congress's intent was to provide the CFTC with exclusive jurisdiction to regulate commodities. Such exclusive jurisdiction precludes states from exercising supplementary regulatory authority over commodity transactions. *See e.g. Jones v. B.C. Christopher & Co.,* 466 F.Supp. 213, 220 (D.Kan.1979) ("It is now established, however, that the SEC and other federal agencies are 'stripped' of authority to regulate commodities transactions, and the state regulatory agencies are likewise preempted by the 'exclusive jurisdiction' of the CFTC.") (internal citations omitted); *Hofmayer v. Dean Witter & Co., Inc.,* 459 F.Supp. 733, 737 (N.D.Ca. 1978) ("In the light of Congress' [sic] plainly stated intent to have the Commodity Exchange Act, as amended, preempt the field of regulation of commodity futures trading, any claim under federal or state securities statutes is barred."); *Bartels v. Int'l Commodities Corp.,* 435 F.Supp. 865, 868 (D.Conn.1977); *Int'l Trading Ltd. v. Bell,* 262 Ark. 244, 556 S.W.2d 420 (1977). *But see Khalid Bin Talal Bin Abdul Azaiz Al Seoud v. E.F. Hutton & Co., Inc.,* 720 F.Supp. 671, 680 (N.D.Ill.1989) (holding state law causes of action for constructive fraud, negligence and negligent misrepresentation are not preempted by the CEA); *Mallen v. Merrill Lynch Futures, Inc.,* 623 F.Supp. 203, 204 (N.D.Ga.1985) (finding CEA does not preempt recovery under state common-law theories in absence of conflict between state and federal statutory schemes).[2]

The CFTC's exclusive jurisdiction, however, is limited by 7 U.S.C. § 16(e). The specific limitation at issue in this case is found at 7 U.S.C. § 16(e)(1)(C) which states:

> Nothing in this chapter shall supersede or preempt the application of any Federal or State statute, including any rule or regulation thereunder, to any person required to be registered or designated under this chapter who shall fail or refuse to obtain such registration or designation.

In other words, the state properly exercised jurisdiction if petitioner was required to register with the CFTC but failed to do so. With minimal case law interpreting 7 U.S.C. § 16(e)(1)(C), the court finds it appropriate to consult the legislative history.

In 1982, the CEA was amended extensively. *See* Futures Trading Act of 1982, Pub.L. No. 97–444, 96 Stat. 2294 (1982). Of particular interest, the new legislation included what is currently known as 7 U.S.C. § 16(e). Futures Trading Act of 1982, sec. 229, 96 Stat. 2294, 2318 (1982) (codified as amended at 7 U.S.C. § 16(e)). Although § 16(e) has rarely been used to invoke state jurisdiction, the legislative history indicates that by enacting the new legislation, Congress intended for the states to take a more active enforcement role in prosecuting commodities fraud.[3]

---

**2.** Note that cases allowing state jurisdiction in limited circumstances are dated after 1982. As noted below, in 1982 the Futures Trading Act of 1982 amended the CEA expanding state involvement in commodity transactions. *See* Futures Trading Act of 1982, sec. 229, 96 Stat. 2294, 2318 (1982).

**3.** See *Commodity Futures Trading Comm'n v. American Metals Exch. Corp.,* 775 F.Supp. 767, 779 (D.N.J.1991) *rev'd on other grounds,* 991 F.2d 71 (3d Cir.1993), for an example of § 16(e) being invoked to prosecute under New Jersey and Florida securities laws.

*See American Metals Exch. Corp.*, 775 F.Supp. 767 at 779 (stating that the exclusive jurisdiction of the Commodity Futures Trading Commission ended in 1982 with the enactment of the Futures Trading Act of 1982).

The House Report contains the following language:

> Notwithstanding the Act's exclusive jurisdiction and preemption provisions, [this section] permits any Federal or State law to be applied to activities of persons (1) who are required to, but who do not obtain, registration or designation by the CFTC . . . .

H.R. REP. NO. 97–565, pt. I at 32 (1982), *reprinted in* 1982 U.S.C.C.A.N. 3881.

> This section adds a new subsection (e) to section 12, [§ 16], of the Commodity Exchange Act to enhance the authority of the States in protecting the public against persons engaging in unlawful off-exchange transactions not authorized by the Act.

*Id.* at 44 (1982), *reprinted in* 1982 U.S.C.C.A.N. 3893.

> H.R. 5447 would explicitly permit the application of any Federal or State law to be applied to activities of persons who are required to, but who do not obtain, registration or designation by the CFTC . . . .
>
> .        .        .        .        .
>
> Finally, the subsection permits the application of Federal or State statutes (including any rule or regulation thereunder) to any person required to be registered or designated under this Act who fails or refuses to obtain such registration or designation . . . .

This amendment, together with existing section 6d of the Act, which permits State law enforcement authorities to proceed in Federal court against persons who violate the Act, will enable the Commission to call upon the assistance of other law enforcement bodies in order to foster a coordinated and effective program to detect and prosecute those who engage in unlawful conduct.

*Id.* at 103–104 (1982), *reprinted in* 1982 U.S.C.C.A.N. 3952–53. This language clearly indicates that under the proper circumstances, a state may permissibly prosecute commodities fraud under its own statutes. The next step, then, is evaluating whether it was permissible for the state to exercise jurisdiction under the circumstances of petitioner's case.

In evaluating whether the state properly exercised jurisdiction pursuant to 7 U.S.C. § 16(e)(1)(C), the first issue to be determined is whether petitioner was required to register with the CFTC. The Kansas Court of Appeals found petitioner was required to register under the CFTC. This court agrees. The CEA defines a "commodity pool operator" as:

> any person engaged in a business that is of the nature of an investment trust, syndicate, or similar form of enterprise, and who, in connection therewith, solicits, accepts, or receives from others, funds, securities, or property, either directly or through capital contributions, the sale of stock or other forms of securities, or otherwise, for the purpose of trading in any commodity for future delivery on or subject to the rules of any contract market . . . .

7 U.S.C. § 1a(5). Petitioner squarely fits within this definition as he "solicited and accepted funds from his investors to be used in trading of commodities." Thus, petitioner was required to register with the CFTC. *Stuber,* 1 P.3d at 340.

After determining petitioner was required to register with the CFTC, the next issue is whether petitioner failed to comply with the registration requirement. The

court of appeals found that petitioner did not register with the CFTC as required by the CEA, allowing the state to exercise jurisdiction as provided by 7 U.S.C. § 16(e)(1)(C). *Stuber,* 1 P.3d at 340. Petitioner does not dispute the fact that he was not registered with CFTC, however, he maintains he was exempt from registration per 17 C.F.R. § 4.13(a)(2).

Under 17 C.F.R. § 4.13(a)(2), a commodity pool operator ("CPO") is exempt from registration if the total gross capital contributions received for the pool do not exceed $200,000 *and* the pool operated by the CPO have no more than fifteen participants. Petitioner claims he could have established the pool he operated had less than $200,000 in capital contributions and less than fifteen participants had he been given the opportunity.

The court of appeals did not expound on whether petitioner was exempt from registration other than mentioning plainly that he was not exempt. Thus, this court finds it necessary to review the record and determine whether the exemption promulgated in 17 C.F.R. § 4.13(a)(2) is available to petitioner.

Petitioner's assertion that he could have established the pool he operated had less than $200,000 in capital contribution and less than fifteen participants is not supported by the record. Rodney Wake, the Kansas Securities Commission investigator testified the pool in question contained $318,620. (R. Vol. 9, at 20). Additionally, Mr. Wake identified more than fifteen investors by name during the bench trial.[4]

(R. Vol. V., at 28 and 29); (R. Vol. IX, at 54–56, 59–61, 64–67).

■ This evidence, which the court must view in the light most favorable to the prosecution, establishes petitioner was required to register with the CFTC and, by his own admission, failed to do so.[5] *Jackson v. Virginia,* 443 U.S. 307, 324, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979) (reviewing the facts in the light most favorable to the prosecution in a habeas action). Petitioner's failure to register under the CFTC enabled the state to assert jurisdiction and rightfully prosecute him under the laws of the state. 7 U.S.C. § 16(e)(1)(C). Thus, petitioner's claim that the state lacked subject matter jurisdiction is without merit and his writ for habeas corpus is denied on this point.

**B. Jurisdiction and Shifting the Burden of Proof**

Petitioner alleges his Sixth and Fourteenth Amendment rights were violated when the Kansas Court of Appeals found the state properly exercised jurisdiction. Specifically, petitioner contends the appellate court shifted the burden of proof from the prosecution to the petitioner by inferring from the record that he failed to register with the CFTC.[6]

By inferring from the record that petitioner had not registered with the CFTC, the court of appeals did not place the burden of disproving jurisdiction on petitioner. Instead, the court of appeals merely consulted the record and deter-

---

4. After careful review of the record, the court does not accept petitioner's contention that only twelve pool participants were identified by Mr. Wake. Even if the court found only twelve pool participants were identified, petitioner still would not be qualified for the exception under 17 C.F.R. § 4.13(a)(2) because the pool contained more than $200,000.

5. In petitioner's Memorandum of Law in Support of Petition for Writ of Habeas Corpus (Doc. 2 at 8), petitioner admits he was not registered with the CFTC.

6. This inference enabled the court of appeals to find the state of Kansas properly exercised jurisdiction under 7 U.S.C. § 16(e)(1)(C).

mined the trial court properly exercised jurisdiction. Because the record contained no evidence that petitioner registered with the CFTC, the court inferred that he did not.[7] Reviewing courts routinely refer to the record in consideration of whether the lower court had subject matter jurisdiction. *See e.g. United States v. Hassan*, No. 99–1400, 2000 WL 1477967, at *1 (6th Cir. Sept.26, 2000).

■ Moreover, for petitioner's position to be accepted, subject matter jurisdiction would have to be considered a substantive element of every criminal offense that the prosecution must prove beyond a reasonable doubt. It is well established that the burden of proving all the elements of a crime beyond a reasonable doubt always remains with the prosecution. *In re Winship*, 397 U.S. 358, 364, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970) ("[W]e explicitly hold that the Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged.") Whether petitioner was registered with the CFTC was not a "fact necessary to constitute the crime" with which petitioner was charged. *Id.* Instead, it was merely a factor used in determining jurisdiction. In fact, petitioner was not even charged under the CEA or under the rules and regulations promulgated by the CFTC. Petitioner was charged under Kansas state statutes.

■ Because the court of appeals properly consulted the record to determine jurisdiction and because subject matter jurisdiction is not an element of the crime that must be proved beyond a reasonable doubt, petitioner's claim is without merit and a writ of habeas corpus is denied.

## C. Waiver of Jury Trial

Petitioner contends his constitutional right to a jury trial was violated because he was coerced into accepting a bench trial for fear of not being granted an appeal bond.[8] According to petitioner, in a conference between the attorneys and the trial judge that took place in chambers, the judge allegedly threatened to refuse issuance of an appeal bond if petitioner insisted on a jury trial. Petitioner's attorney discussed the contents of the meeting with petitioner, and, as a result, petitioner alleges he accepted a bench trial in lieu of a jury trial for fear he would not be granted an appeal bond in the event of conviction. The only formal record of petitioner's jury trial waiver is the following exchange:

THE COURT: Your attorney indicates that you're willing to waive your right to a jury trial in this case. What that means is that if this case goes to trial, it will be tried before a judge and you will be giving up your right to have

---

7. Petitioner maintains he could have established he was not required to register with the CFTC because capital contributions in the pool were less than $200,000 and the pool contained less than fifteen participants. *See* 17 C.F.R. 4.13(a)(2). If petitioner had been able to make such a showing, 7 U.S.C. § 16(e)(1)(C) would not operate to allow state jurisdiction and the CFTC would have retained exclusive jurisdiction. As noted above, after careful review of the record, this court determined petitioner was not exempted from registration with the CFTC because capital contribution to the pool exceeded $200,000

and the pool operated by petitioner included more than fifteen participants. *See supra* Part VI.A.

8. A criminal defendant has a constitutional and statutory right to a jury trial. U.S. CONST. amend. VI; Kansas Constitution, Bill of Rights §§ 5, 10; Kan. Stat. Ann. 22–3403(1). This right, however, may be waived provided such waiver is made freely, knowingly, and intelligently. *Adams v. United States ex rel. McCann*, 317 U.S. 269, 275, 63 S.Ct. 236, 87 L.Ed. 268 (1942).

this case tried before a jury of 12 persons; is that what you wish to do?

MR. STUBER: Yes, I understand that, Your Honor, and that's, I guess, what I wish to do, yes.

(R. Vol. 7, at 2–3).

Obviously there was no record of the conversation held in chambers. Thus, pursuant to Kansas Supreme Court Rule 3.04 [9] petitioner attempted to reconstruct the record. The court of appeals found petitioner's attempt to reconstruct the record inadequate because instead of submitting a settled statement as required by the rule, petitioner submitted "numerous conflicting letters and affidavits." [10] *Stuber*, 1 P.3d at 338. Because of the inadequacy of the reconstructed record, the court of appeals ruled on the record as it existed before the attempted reconstruction.[11] Based on the record, the court of appeals found petitioner's waiver of jury trial was made voluntarily and with knowledge and understanding of his actions. *Stuber*, 1 P.3d at 338.

■ To the extent petitioner argues the court of appeals improperly disregarded the conflicting affidavits and letters under Kansas Supreme Court Rule 3.04, the court of appeals decision not to consider such evidence it is a matter of state law

and is beyond the purview of a federal habeas court. *Estelle*, 502 U.S. at 68, 112 S.Ct. 475. "[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions." *Estelle*, 502 U.S. at 67–68, 112 S.Ct. 475.

■ Additionally, this court may only grant relief if the decision by the court of appeals was contrary to clearly established federal law or was an "unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). After reviewing the record, the court finds no violation of clearly established federal law. The transcript of petitioner's jury trial waiver indicates petitioner voluntarily and knowingly waived his right to jury trial. Finally, the court finds the court of appeals determination of facts on record was not unreasonable. Therefore, petitioner's writ of habeas corpus is denied as the to the issue of voluntary jury trial waiver.

## VII. CONCLUSION

Because the court finds the state of Kansas properly exercised jurisdiction, the Kansas Court of Appeals took proper steps to determine whether the state lawfully exercised jurisdiction, and the petitioner's

---

9. This rule provides that if no official record of a proceeding is available, "a party to an appeal may prepare a statement of the evidence or proceedings from the best available means, including his own recollection, for use instead of a transcript." Ks. SUP. CT. R. 3.04. Opposing parties may submit their recollection of the events and then the judge of the district court approves or settles the collection of facts.

10. Petitioner submitted several affidavits and letters. The affidavits and letters from petitioner's attorneys indicate the trial judge threatened to withhold issuance of an appeal bond if petitioner did not accept a bench trial. The letter submitted by the trial judge indicat-

ed he had no recollection of the conversation and therefore could not "settle" what was said in the conference. Finally, the affidavit from the prosecutor indicated the trial judge merely said he did not customarily set an appeal bond after conviction in his court. The trial judge was unable to "settle" the record because the affidavits submitted by the petitioner were in conflict.

11. The court questions the trial judge's ability to "settle" the record on an issue in which he was essentially being accused of violating the petitioner's constitutional rights. As stated below, because this is a matter of state law, it is beyond the purview of this court.

right to jury trial was not infringed upon, petitioner's request for habeas relief is denied.

**IT IS THEREFORE BY THIS COURT ORDERED** that the petition for writ of habeas corpus (Doc. 1) filed pursuant to 28 U.S.C. § 2254 is denied.